Bergan, J.
Decedent Samuel Rossman and defendant Tobias Cohen worked together. On the night of January 21,1965 Cohen undertook to drive Rossman home in the car owned by his wife, defendant Helen Cohen. On the eastbound side of the Prospect Expressway in Brooklyn the car had a flat tire. There were at that point three eastbound lanes. Cohen drove the car to the extreme right lane and stopped at the shoulder but did not mount the four- to five-inch rounded curb to get on the shoulder which was about eight feet, eight inches wide and used for parking disabled cars. Cohen left the car where he stopped it at the curb in the right lane. It was dark; the weather was clear.
Cohen got out of the car, saw an emergency telephone on the other side of the road and started for it. Rossman also got out of the car on the right-hand side. Cohen testified that before he started to go to the phone he told Rossman to “ stay here”. “Here” was “in front of the left door * * * I told him that would be the safest place to be * * * I told him to stand up against the door and to wave traffic away from the car ”.
Cohen did not lift the hood of the car or the lid of the trunk. He did not remember whether or not the rear lights were on or off. He had a flashlight in the glove compartment, but it did not occur to him to give it to Rossman.
*303 Rossman stood where Cohen told him to stand, on the left side of the car. This was on the side where traffic was moving. Standing in this position he was struck and killed by a car driven by defendant Joseph La Grega who is not a party to the present appeal.
The accident occurred because La Grega did not see the Cohen car in time. He testified that all of a sudden I seen this car. There was no lights in the rear of it, none whatsoever ”. He was then “ pretty close to it ”. He had been moving from the center lane to the right lane in order to leave the road at an exit ahead.
When he saw the car was not moving he swerved to the left ‘ and then I brought it back again to straighten it out ’ ’. He “ heard an impact Stopping his ear and going back to find out “ what damage was done” he saw the decedent for the first time, lying on the ground.
It is clear, then, that the failure of Cohen’s car to have lights, as well as its position in the traffic lane and La Grega’s failure to see it earlier, were the effective causes of this accident. Ross-man would not have been killed if he had not been in that spot; but his being at that spot playéd no part in causing the collision.
This is not a case of his being struck because he was in the path of La Grega and could not be seen by La Grega as he drove past the Cohen car. Rather the suddenness with which La Grega came upon Cohen’s car and turned to the left caused him to lose some control of the car, swinging it to the right into the left side of the Cohen car where Rossman was standing.
La Grega’s seeing or not seeing Rossman, therefore, played no causal part in the accident. The remaining question is whether the place Rossman was standing was so generally dangerous to himself that his just being there must be deemed contributory negligence as a matter of law even though his presence played no role of causation. Holding his presence there contributory negligence as a matter of law, the Appellate Division reversed an interlocutory judgment for plaintiff and dismissed the complaint.
Since 1913 the New York statute has placed the burden on a defendant to show affirmatively the contributory negligence of the decedent in an action for wrongful death (L. 1913, ch. 228; *304 in 1965 Decedent Estate Law, § 131, now EPTL 5-4.2; Sachheim v. Pigueron, 215 N. Y. 62).
Although New York has clung to a rule that a living-plaintiff must establish his own freedom from negligence, it is the majority rule in this country that in all negligence actions, including those maintained by living persons for injury or property damage, the defendant claiming contributory negligence of the plaintiff has the burden of showing it (65A C. J. S., Negligence, § 210, p. 483, and numerous authorities cited at pp. 483-488). And it is likewise the general rule where contributory negligence is an affirmative defense the injured person is presumed to have used due * * * care ” (op. cit., § 206, subd. b, p. 457).
One of the affirmative defenses pleaded by defendants Cohen is that decedent’s death was caused or contributed to by decedent’s own negligence and want of care. In this court it is argued that standing where he did was contributory negligence as a matter of law and that no person of ordinary intelligence would engage in “ conduct as inherently dangerous * * * as this ”.
Still it was the defendant Tobias Cohen, who interposed this defense and now makes this argument, who testified that he himself told decedent to ‘ ‘ stay here ’ ’ beside the left door of the car and that this “ would be the safest place to be ”. Of course, responsibility is not fixed by the private judgment of either the decedent or defendant but by a court’s and jury’s conception of what the prudent man would do. Nevertheless, since defendant has the burden of showing affirmatively the decedent’s negligence, one must have some reservation about his pleading as negligent the very thing he told the decedent to do (cf. Zurich Gen. Acc. & Liab. Ins. Co. v. Childs Co., 253 N. Y. 324, 328).
The purpose of decedent’s being where he was was to try to prevent injury to others using the road and coming on the standing car suddenly. Mr. Cohen testified: “ I told him to stand up against the door and to wave traffic away from the car.” In such a situation an error of judgment will not impute negligence as a matter of law. "Whether his act was “ foolhardy or reasonable in the light of the emergency confronting him ” is a jury question (Wagner v. International Ry. Co., 232 N. Y. 176,182).
*305 The rule has been consistently applied in New York that where a person acts in an emergency which he did not himself create, to prevent injury to others or to rescue another in danger, he is not held to the standard of care for his own safety that reflective and objective after judgment might suggest. In an early and important case, a man killed while rescuing a child from tracks before an oncoming train was held not negligent as a matter of law (Eckert v. Long Is. R. R. Co., 43 N. Y. 502 [1871]).
A man voluntarily getting himself in a place of danger by taking hold of the bumper of a truck to attempt to guide it to prevent an accident by contact with a car was held not negligent as a matter of law in his own action as plaintiff in Wardrop v. Santi Moving & Express Co. (233 N. Y. 227). Whether what the plaintiff did “ was or was not reasonable ” was for the jury (p. 229). In the same direction is the case of the injured plaintiff who pushed defendant from the path of her unattended moving car and was himself injured (Carney v. Buyea, 271 App. Div. 338, mot. for lv. to app. den. 271 App. Div. 949; see, also, Matter of Waters v. Taylor Co., 218 N. Y. 248).
This exception to the contributory negligence doctrine is of general application, i.e., that ‘ ‘ conduct which might otherwise be considered contributory negligence may not be so considered where a person is injured in attempting to save others from imminent danger of personal injury or death ” (65A C. J. S., Negligence, § 124, p. 83).
It is closely related to the rather similar concept that, confronted with an emergency not created by his own negligence, a man is governed by the standard that would apply to one under pressure of emergency and not by what one might do if he had time for reflection and deliberate judgment (see 65A C. J. S., Negligence, § 123, pp. 77-83).
There has been a noticeable reluctance by the court to apply strictly in death cases the doctrine of contributory negligence. The last time that the court was unanimous in holding a dead person negligent as a matter of law was almost 40 years ago in Crough v. New York Cent. R. R. Co. (260 N. Y. 227 [1932]) and this was in a railroad- crossing case, a type which fell in a special category of the law.
There the estates of the dead passengers were allowed recovery, although the estate of the driver who crossed the *306 tracks ‘ ‘ heedless of ordinary precaution ” (p. 231) was denied recovery.
But in 1947 in Wadsworth v. Delaware, L. & W. R. R. Co. (296 N. Y. 206), in a case exactly like Crough (supra), the court was divided, Chief Judge Lotjghban and Judge Conway dissenting on the ground ‘ ‘ that whether or not the defendant had sustained the burden of establishing the decedent’s contributory negligence was a question of fact for the jury ’ ’ (p. 214).
In Tedla v. Ellmann (280 N. Y. 124) a pedestrian who was killed walking in violation of statute on the wrong side of a highway and pushing a baby carriage containing junk was held not negligent as a matter of law. The mere walking of the decedent in the place he was hit, although legally wrongful, was held not to have effectively played a causative part in the accident although if he had not been in that place he would not have been hit; and in that respect the present case is quite similar.
Indeed, the general softening of the rigidities of the doctrine of contributory negligence in New York may be seen in recent cases where the injured person is himself suing and thus has the burden of showing he was not negligent. The tendency is to treat it almost always as a question of fact (Orwat v. Smetansky, 22 N Y 2d 869; Luce v. Hartman, 6 N Y 2d 786; Schuvart v. Werner, 291 N. Y. 32; and the case of the surviving injured plaintiff in Tedia v. EUman, supra).
The doctrine has, indeed, been long subjected to critical theoretical attack by commentators on the law of torts. Prosser has observed: “ The history of the doctrine has been that of a chronic invalid who will not die.” He concluded: “ With the gradual change in social viewpoint, stressing the humanitarian desire to see injuries compensated, the defense of contributory negligence has gradually come to be looked upon with increasing disfavor by the courts, and its rigors have been quite extensively modified” (Prosser, Torts [3d ed.], p. 428). The theories justifying application of the doctrine were regarded by Prosser as “ the antique heritage of an older day” (p. 428).
In tracing the history of the doctrine back to Butterfield v. Forrester (11 East 60, 103 Eng. Rep. 926 [K. B., 1809]) Dean Leon Green has observed that it emerged as dictum in review *307 ing an otherwise properly tried and decided case to meet certain perceived or apprehended conceptions of early nineteenth century Judges in tort law (G-reen, Illinois Negligence Law, 39 111. L. Rev. 36). He characterized contributory negligence as “ the harshest doctrine known to the common law of the nineteenth century ’ ’.
In Butterfield plaintiff was riding his horse rapidly at dusk and ran into a barrier placed on part of the road by defendant, although there was room for him to get by. The Trial Judge charged the jury that if a person of ordinary care could have seen and avoided the obstruction and if they found the plaintiff had been riding extremely hard and without ordinary care they should find for defendant, which they did.
This, as G-reen notes, was itself an unexceptionable charge; but Lord Ellekborotjgh, O. J., in denying a new trial, observed that “ One person being in fault will not dispense with another’s using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant and no want of ordinary care to avoid it on the part of the plaintiff ”.
This, as G-reen noted, was interpreted by some courts to impose a separate burden on the plaintiff “ at both points ”, (a) to show defendant’s negligence, and (b) to show the absence of negligence on the part of the plaintiff. “ This formula ”, G-reen noted, “ gave the judges their first real power over negligence cases ” (op. cit., p. 38).
It was, indeed, a legal concept that created an artificial dichotomy that persisted all through the nineteenth century and is slowly yielding now to the persistent arguments of its critics that it is at once unfair and not well founded in legal principle.
Charles L. B. Lowndes analyzed philosophically and historically the development of contributory negligence, including its origin in Butterfield v. Forrester (“ a leading case which established the doctrine ”) in Contributory Negligence (22 G-eo. L. J. 674, 698). He attributed much of its acceptance to the fact many courts are “ causation conscious ” (p. 675). At the end of a wide-ranging analysis he concluded that, as it has developed in the common law, the doctrine is “ thoroughly unjust and illogical” and that its unsatisfactory operation may lead the *308 profession to “be stimulated to achieve something better ” (p. 709).
And Green, in Contributory Negligence and Proximate Cause (VI North Carolina L. Rev. 3), likewise attributes the doctrine to the search for the certainties of abstract causation: “ The attempt which common law courts have made to resolve every major problem of legal liability in tort into terms of causal relation marks the most glaring and persistent fallacy in tort law ” (p. 3).
Robert A. Leflar, in The Declining Defense of Contributory Negligence (1 Ark. L. Rev. 1), 25 years ago wrote that the doctrine “is visibly shrunken and still diminishing ” and observed, as many other commentators have, its inconsistency in theory and injustice in application.
To continue to accept it, as a more recent writer has observed, ‘ ‘ we may as well reconcile ourselves to inconsistent and irreconcilable cases ” (Note by G. C. Parker, 34 North Carolina L. Rev. 141).
One basic inconsistency that has been noted is that there is a qualitative difference, when it comes to imposing liability on such a theory as tort, between one whose negligent act does harm to others and one whose negligent act does harm to himself, and the same mechanistic standard ought not be applied undifferentially as to both.
It would seem to follow, then, that on any fair analysis of New York law, the question of Rossman’s contributory negligence in standing where he did to wave off traffic from the danger of the standing car would be for the jury. At least we ought not extend the perimeters of this unsatisfactory doctrine wider than we need to.
If one puts himself in Rossman’s situation after Cohen had a flat tire, it will be seen that his choice of action was extremely limited. He was not then a man who had a choice of sitting safely in his living room or going out in the street into traffic danger. He was in a situation of acute danger no matter what he did unless he walked well away from the car and got off the road.
If he sat in the car he would have been in danger; if he stood in back of it without a flashlight (and he had none) he would have been in danger. Had he walked 30 or 40 feet back and *309 attempted to wave off traffic, as people are frequently seen to do along expressways, he would also have been in danger without a flashlight. It did not necessarily add much to the peril by standing, as Cohen told him to do, near the left door of the car and waving down traffic.
It is arguable, at least, that if the car was going to be hit it would be from the rear and that standing neither in front of, nor in the rear of, the car he would be less likely to be injured. In the event, which was certainly unpredictable, the car that actually hit him swerved first to the left to avoid Cohen’s car and then, out of control, to the right and at an angle into the side where decedent was standing. No one would be likely quite to anticipate this.
It is not easy to say just what would be the right thing to do to help guard against danger caused by the stalled car. It is not a situation open to dogmatic answers after the event. It is, at least, reasonably arguable; and if it is arguable it ought not be held as a matter of law that the dead man was negligent and that defendant has sustained his burden in this respect.
Defendant Tobias Cohen’s negligence could readily be found from his failure to place the car on the available shoulder instead of stopping it on the driving lane; from his failure to raise the hood or trunk cover; from his failure to keep the rear lights on (as the jury could have found), and from his failure to give Rossman the flashlight he had in the glove compartment.
The order should be reversed and a new trial directed, with costs to abide the event.
Chief Judge Ftjld and Judges Burke, Scileppi, Breitel, Jasen and Gibson concur.
Order reversed, etc.