CHARLES F. HART, JR., et al., Respondents, *v.* CHARLES SCRIBNER, Appellant. (Action No. 1.)

UNITED STATES OF AMERICA, as Subrogee of CHARLES F. HART, JR., Plaintiff-Intervenor, *v.* CHARLES SCRIBNER, Defendant. (Action No. 2.)

CHARLES C. SCRIBNER et al., Appellants, *v.* THERESA HART et al., Respondents. (Action No. 3.)

Second Department, March 18, 1974.

*O'Brien & Kelly* (*Bernard S. Meyer* of counsel), for Charles Scribner, appellant in Action No. 1.

*Charles F. Cacciabaudo* (*Bernard S. Meyer* of counsel), for Charles Scribner and another, appellants in Action No. 3.

*Herz & Ryder* (*Herbert F. Sullivan* of counsel), for Charles F. Hart, Jr., and another, respondents in Action No. 1.

*A. Paul Goldblum* for Theresa Hart and another, respondents in Action No. 3.

*Benjamin Purvin* (*Charles F. Brady* of counsel), for Patricia Hart, respondent in Action No. 3.

HOPKINS, J. In a joint trial on the issue of liability only, the plaintiffs in Action No. 1 in these consolidated actions, Charles F. Hart, Jr., and Patricia Hart, have recovered a judgment against the defendant therein, Charles Scribner. The main question is whether the instructions of the trial court concerning the doctrines of rescue and emergency were adequately charged to the jury under the circumstances of the case. We conclude that the instructions were inadequate and reverse the judgment and grant a new trial.

Shortly after midnight of September 4, 1966 Patricia Hart was returning home in her automobile after completing her work at Central Islip State Hospital. As she drove along Johnson Avenue, a two-lane black-topped unlighted highway, she noticed that the headlights of her car were dimming. She pulled the car to the road shoulder and stopped; before she could remove the ignition key, the engine stalled. Though she testified that the car was not located on the paved portion of the highway, other testimony at the trial placed the car on the highway, so that this question was a matter for resolution by the jury.

In a few minutes Charles F. Hart, Jr., her brother, arrived at the scene in an automobile belonging to his mother, Theresa Hart. He placed his car so that it faced the stalled car, the front of each car being so close that he could connect cables from the battery of his car to the engine of Patricia's car. The headlights of his car, so Charles and Patricia testified, were illuminated. Charles and Patricia also testified that Patricia held a flashlight shining on the engine while he was working on the cables.

While Charles was thus occupied, Charles Scribner was driving his automobile on Johnson Avenue, accompanied by his wife, Constance, and a friend, and collided with Patricia's car. The testimony conflicted as to the way in which the accident happened.

Patricia and Charles testified that the Scribner car came toward them on the wrong side of the road at a speed of about 50 miles an hour, then suddenly veered and struck Patricia's car in its rear. The Scribners testified that while they were traveling at the rate of about 30 miles an hour, an automobile coming in the opposite direction crossed over into their lane of traffic, and in response Charles swerved to the right, after that car passed them, he suddenly saw Patricia's car without

lights in the road 25 or 30 feet away. He applied his brakes, but could not stop in time to prevent the collision.

Three actions arose from the accident and were tried jointly. The first action was brought by the Harts against Charles Scribner for recovery of damages for injuries suffered by Charles Hart and for injury to Patricia Hart's car.[1] In the second action the United States of America sued Charles Scribner for the reasonable value of medical services furnished to Charles Hart, who was a member of the armed forces. In the third action the Scribners sued Theresa Hart, Patricia Hart and Charles Hart for recovery of damages for injuries suffered by Constance Scribner and for loss of consortium and medical expenses incurred by Charles Scribner. The final verdict of the jury, after some confusion on its part and interrogation by the trial court, was in favor of Charles and Patricia Hart against Charles Scribner in the first action and in favor of Theresa, Patricia and Charles Hart against the Scribners in the third action.[2] The manner in which the verdict was rendered is challenged by the Scribners on this appeal. In view of the disposition we make of the case, we do not reach the questions of the irregularity or impropriety of the verdict raised by them.

From the record it is clear that factual issues existed which required determination by the jury in order for a verdict of liability to be returned. Obvious issues of fact arose concerning the position of Patricia's car on or off the pavement of Johnson Avenue, a two-lane highway, the position of Charles Hart's car, particularly with respect to whether his headlights could be plainly seen by oncoming vehicles, the speed with which Charles Scribner was driving, and the existence of the fourth car which forced Charles Scribner to move his car to the right, according to the testimony of the Scribners. It is almost self-evident that a perilous situation faced both the Harts and the Scribners. On the one hand, Patricia's car without lights was parked on or near the highway, and Charles was attempting to put her car into operation, with his own automobile parked close to hers. On the other hand, the Scribners were proceeding at a rate of speed which might or might not be considered excessive under the circumstances.

This condition of peril invoked the doctrine of emergency. When Charles Hart reached the scene of Patricia's disabled car,

---

1. Patricia suffered no physical injuries.

2. By stipulation the United States of America did not participate in the trial and agreed to be bound by the verdict as to Charles Hart's action for personal injuries.

he was made aware of the peril existing not only as to Patricia's car, but also as to the occupants of any oncoming automobile. He was therefore under a duty to act in a reasonable manner both to safeguard the disabled car and oncoming traffic.[3] Accordingly, it became important to instruct the jury concerning the nature of his duty in the presence of an emergency.

The trial court charged the jury as follows:

" Now, the law — since we are dealing with motorists that — I must charge you that it was the duty of all of the motorists in this particular case to operate his or her automobile with reasonable care having regard to the actual and potential hazards existing from weather, road, traffic and other conditions. Now we spoke of Mr. Hart, who went to the rescue of his sister. The Court places Mr. Hart in a position wherein the law must be charged that a person who is injured while attempting to rescue another from peril in an emergency situation is not negligent merely on the grounds that the rescue entails danger to himself. The law has high regards for human life and efforts to save it and danger invites rescue.

" Now, the impulse to respond to an urgent call for aid without complete regard for one's safety is recognized as normal. The law will not impute negligence to an effort to preserve life unless made under such circumstances as to be rash and wanton.

" Now conduct is rash or wanton when it is undertaken in utter disregard of the consequences. Now, if you find that Charles Hart acted in an emergency situation to rescue his sister Patricia Hart from peril, and that Charles Hart's conduct was not rash or wanton, your finding will be that Charles Hart was not guilty of negligence. If you find that there was no peril, and Charles Hart's conduct was rash or wanton, your findings will be that Charles Hart was guilty of negligence and your verdict will be against Charles Hart.

" You must bear in mind that an act or omission to act is wanton if it is intentionally performed or omitted in such a manner as to imply reckless disregard of, or indifference to the probable consequences of the performance or omission to act."

There are several infirmities in this charge. First, it casts Charles Hart in the status of a rescuer. Second, it does not define the term " emergency " for the guidance of the jury. Third, it fails to instruct the jury that the opportunity for deliberation and action is a vital component of the extent of

---

3. The record is unclear as to the extent of time which elapsed from Charles Hart's arrival on the scene to the time of the collision.

the duty of the persons involved under the circumstances (cf. P J I 2:14, 2:42). Fourth, it does not tell the jury that if it finds that an emergency exists, then the standard of care imposed is whether the persons involved acted as would reasonably prudent persons under the same circumstances (cf. *Ward* v. *F. R. A. Operating Corp.*, 265 N. Y. 303, 308; *Breckir* v. *Lewis*, 21 A D 2d 546, affd. *sub nom. Breckir* v. *Pleibel*, 15 N Y 2d 1027; *Cohen* v. *Crimenti*, 24 A D 2d 587; see, generally, Ann. 27 ALR 3d 12, 312). "Failure to make some provision for possible emergencies may constitute negligence" (2 Harper and James, Law of Torts, § 16.11, p. 939).

What has been said about the emergency facing Charles and Patricia applies as well to Charles Scribner, though from a different perspective. If the jury believed the latter's testimony concerning the automobile which had forced his car to the right, it might have found also that an emergency arose due to the presence of the disabled car in his path, thus measuring Scribner's duty under the circumstances. "However, the applicability of the doctrine cannot be decided *in vacuo*. It must be viewed in light of all the facts and circumstances in each case" (*Provenzo* v. *Sam*, 23 N Y 2d 256, 261).

We agree, in short, with the observation of Justice WITMER in *Raimondo* v. *Harding* (41 A D 2d 62, 65): "Whether a plaintiff was contributorily negligent depends only on his conduct under the circumstances, including any emergency which may have confronted him, and should not depend upon whether any particular individual apart from himself created that emergency or affected his conduct."

An emergency may be created without the fault of anyone. When Patricia's car stopped and could not be started, the emergency was occasioned. The stalled car standing without lights became a menace in the setting of the darkness and the narrow road. The continuance of an emergency, arising in the first instance without negligence on anyone's part, may become negligence, if the menace can be ended by reasonable efforts. Thus, although Charles Hart's endeavors on behalf of his sister were prompted by laudable motives, the efficacy of his actions must be judged by the common-law standard of reasonableness under the circumstance of exigency. He was not called on to exercise the prudence of calculated decision brought about by deliberate reflection. Time was short and his means limited. Nevertheless, it was the function of the jury to appraise what he did in providing warning to approaching cars in terms of reasonableness under the existing conditions.

As the jury did not have the advantage of these rules stated in the charge, the judgment must be reversed, on the law, and a new trial granted, with costs to abide the event. Appellants raised no questions of fact on this appeal.

GULOTTA, P. J., MARTUSCELLO, SHAPIRO and MUNDER, JJ., concur.

Judgment reversed, on the law, and new trial granted, with costs to abide the event. Appellants presented no questions of fact on this appeal.