■ RUBY M. JOHNSON, as Administratrix of the Estate of IRVING JOHNSON, Deceased, Appellant, v CLEVELAND A. HICKSON et al., Respondents.—In an action to recover damages for wrongful death and conscious pain and suffering, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered February 13, 1975, which is in favor of (1) defendant Dworkin upon the trial court's dismissal of the complaint against said defendant at the close of plaintiff's case, and (2) the remaining defendants, upon a jury verdict. Judgment affirmed, without costs or disbursements. The evidence supports the jury's verdict (see *Rossman v La Grega,* 28 NY2d 300). The charge was fair and adequate (see *Green v Downs,* 27 NY2d 205, 208-209). Latham, Acting P. J., Damiani and Hawkins, JJ., concur; O'Connor, J., concurs in the affirmance of the judgment as to defendants Dworkin and Threatt, but otherwise dissents and votes to reverse the judgment, sever the action, and grant a new trial as between plaintiff and the remaining defendants, with the following memorandum: In this action for wrongful death and conscious pain and suffering, plaintiff appeals from a judgment of the Supreme Court, Westchester County, entered February 13, 1975, which dismissed her complaint as to all of the defendants. The judgment should be modified, on the law and in the interest of justice, by granting a new trial as to all of the defendants except Dworkin and Threatt. The charge to the jury was seriously inadequate and highly confusing. On December 17, 1969, at approximately 4:00 P.M., defendant Jimmy Gadson, while driving his car in a southerly direction on the New York State Thruway, suffered a flat tire. Gadson testified that although there was an exit not far ahead, he was

unable to maneuver his car through the traffic to the exit. He stopped his car in the left lane of the three-lane highway, put his warning flashers on, lifted his trunk hood, and went to the rear of his car to wave off oncoming traffic. Shortly thereafter, a car driven by defendant Robert Threatt, in which the decedent Irving Johnson was a passenger, passed the scene. Threatt and Johnson offered Gadson assistance. Threatt pulled his car in front of Gadson's car. Threatt proceeded to the rear of Gadson's car in order to wave off traffic, Gadson started to prepare his spare tire for the necessary change, and Johnson began to jack up the front of Gadson's car. Approximately 10 minutes after the good samaritans arrived on the scene, a car, driven by defendant Cleveland Hickson and owned by defendant Humble Leasing Company, plowed into the rear of the Gadson vehicle and then rebounded into the middle lane of the highway, hitting defendant Joseph Dworkin's car. Decedent Johnson, trapped between the Gadson and Threatt vehicles, died of his injuries. Although there was a 2,400-foot straighaway leading up to the Gadson car, and although it was a clear day and not yet dark, defendant Hickson testified that his view of the road was obstructed by a car in front of him, and that he was unable to see the Gadson car until it was too late to avoid the collision. Before the case was submitted to the jury, the complaint was dismissed as to defendant Dworkin. This was proper in the light of the absence of proof that Dworkin was in any way responsible for the accident. As to the remaining defendants, the jury found that defendant Threatt was not negligent, but that defendants Gadson and Hickson had been negligent. As to the negligent defendants there could be no recovery, however, because decedent Johnson had been contributorily negligent. The verdict of the jury should not stand in light of the serious flaws in the charge. As to the defendant Gadson, there were at least three fatal defects in the charge. When a car is stalled in the left lane of a three-lane highway at dusk, an extremely dangerous situation is presented (cf. *Rossman v La Grega*, 28 NY2d 300, 308–309). As to the defendant Gadson, Trial Term recognized its obligation to charge the "danger invites rescue" doctrine if the jury reached the point of considering the decedent's contributory negligence. The charge given was as follows: "It is claimed on behalf of the decedent as to the defendant Gadson, the car with the flat tire, that the decedent was faced with an emergency situation and thereupon the decedent owed a lesser degree of care in his conduct at that time. If you find that Mr. Gadson had committed an act which a reasonably prudent person would have known would have endangered himself and thereby would cause a third person to act in an emergency to avert an injury to him, then that person is negligent toward the third person who is injured in a resultant rescue attempt, but if you find that Mr. Johnson was injured and killed in this situation in an emergency situation to rescue Mr. Gadson from peril, and that Mr. Johnson's conduct was not rash or wanton, your finding will be that the plaintiff was not guilty of contributory negligence. If you find there was no peril to Mr. Gadson or that even though there was such peril that the conduct of Mr. Johnson, under the circumstances, was rash or wanton, your finding will be that Mr. Johnson was guilty of contributory negligence and your verdict must be for the defendant. Conduct is rash or wanton when taken with disregard of consequences." It is quite surprising that in charging the doctrine of "danger invites rescue", Trial Term failed to clearly state the basic concept, underlying the entire area, which is that: "The law has a high regard for human life and efforts to save it. *Danger invites rescue.* The impulse to respond to an urgent call for aid, without complete regard for one's own safety, is recognized as normal" (PJI 2:41;

emphasis supplied). In addition, in defining "rash or wanton" conduct, Trial Term omitted the important emphasis word "utter". "Conduct is rash or wanton when it is undertaken in *utter* disregard of the consequences" (PJI 2:41; emphasis supplied). In light of the fact that "rash or wanton" was defined only once in what is a 35-page charge in the record, the importance of correctly defining "rash or wanton" should be obvious. Finally, there was no effort to relate the evidence on the record to the crucial "rash or wanton" concept. "We agree with the statement in New York Pattern Jury Instructions that the charge 'should be precise and specifically related to the claim of liability [citations]. Broad general statements of the law are inadequate [citations].' (1 NYPJI 2.) It has been well said that '[i] it imperative *to state and outline separately the disputed issues of fact, as the nature of the case and the evidence may require.* Without this kind of guidance the proceedings will not result in an intelligent verdict.' (McBride, Art of Instructing the Jury, § 4.18, p. 143; emphasis as in original.) The corollary, as stated by the same author, is that 'an accurate statement of law is not sufficient if it is not related to the precise issue' *(op. cit.,* § 5.02, p. 182). The rule cannot be overstressed, so vital is it to the fair submission of a jury case" *(Green v Downs,* 27 NY2d 205, 208–209). The charge was erroneous and inadequate as it related to the defendants Hickson and Humble. Plaintiff asserted that in order for the jury to find that decedent had been contributorily negligent vis-à-vis these defendants, it would have to find more than simple contributory negligence. Trial Term refused to give such a charge. This was error because plaintiff was entitled to an "emergency" charge as to contributory negligence. As stated by Mr. Justice Hopkins: "the standard of care imposed is whether the persons involved acted as would reasonably prudent persons under the same circumstances * * * We agree, in short, with the observation of Justice WITMER in *Raimondo v Harding* (41 A D 2d 62, 65): 'Whether a plaintiff was contributorily negligent depends only on his conduct under the circumstances, including any emergency which may have confronted him, and should not depend upon whether any particular individual apart from himself created that emergency or affected his conduct' " *(Hart v Scribner,* 44 AD2d 59, 64). This error was compounded by the fact that all of the defendants received the benefit of an "emergency" charge as to their own negligence. The failure to give the "emergency" charge as to decedent's contributory negligence is sufficient, standing by itself, to require a new trial as to Hickson and Humble. There were, however, additional deficiencies in the charge. Trial Term failed to charge that the decedent was not bound to anticipate negligence on behalf of other drivers on the Thruway (see 61 CJS, Motor Vehicles, § 476, subd b, pp 133–134). The charge as to proximate cause, insofar as it related to contributory negligence, was inadequate. There was a lack of clarity that the contributory negligence had to be a "material" element in causing the accident (PJI 2:35). Finally, as with defendant Gadson, there was a failure to adequately explain to the jury in this complex case how the evidence related to the applicable legal principles. As stated in *Green v Downs (supra,* p 208): "The error was compounded by an almost complete lack of specificity in the over-all charge; and, in particular, by the failure to discuss the evidence and to relate to it the principles of law that were charged, and to apply to each party's version the pertinent statutory and decisional law. We deem it essential that a charge 'incorporate the factual contentions of the parties in respect of the legal principles charged.' *(Arroyo v. Judena Taxi,* 20 A D 2d 888, 889; *O'Connor v. 595 Realty Assoc.,* 23 A D 2d 69, 74, app. dsmd. 17 N Y 2d 493; *Kroemer v.*

*Raybestos Manhattan,* 247 App. Div. 105, 106). The trial court's instructions 'should state the law as applicable to the particular facts in issue in the case at bar, which the evidence in the case tends to prove; mere abstract propositions of law applicable to any case, or mere statements of law in general terms, even though correct, should not be given unless they are made applicable to the issues in the case at bar. * * * Thus, in negligence actions mere abstract rules applicable to any negligence case, or mere statement of the law of negligence in general terms, even though correct, should not be given unless made applicable to the issues in the case at bar.' (53 Am. Jur., Trial, § 573; 38 Am. Jur., Negligence, § 370; and see *Dambmann v. Metropolitan St. Ry. Co.,* 180 N. Y. 384, 386–387, mot. for rearg. den. 181 N. Y. 504)". In this wrongful death action the burden was on the defendants to prove decedent's contributory negligence, and that decedent was not confronted with an emergency (see *Rossman v La Grega,* 28 NY2d 300, 303–304, *supra; Scott v State of New York,* 27 AD2d 961, mot for lv to app den 20 NY2d 643). There was strong evidence to establish that Gadson's car blinkers were on and his trunk hood raised, that the road leading up to the scene of the accident was a straight and level 2,400-foot straightaway, that Gadson and Threatt had already successfully waved off approximately 35 cars before the accident occurred, and that it was a clear day and not yet dark. Being fully conscious of the respect due a jury's verdict, I must still take note that the trial was lengthy, the charge vague and inadequate and the issues complex. In light of the strong evidence that precautions were taken to avoid an accident, and in light of the seriously defective charge, it is clear that both as a matter of law and in the interest of justice, a new trial is required as to all of the defendants except Dworkin and Threatt. I therefore respectfully dissent.