■   ROBERT BASS et al., Appellants, v STANDARD BRANDS, INC., Respondent and Third-Party Plaintiff. J. BASS & SONS, INC., et al., Third-Party Defendants.—Judgment, Supreme Court, New York County, entered May 31, 1978, dismissing the complaint at the close of plaintiffs' case, reversed, on the law, and the matter remanded for a new trial, with $75 costs and disbursements of this appeal to abide the event. Trial Term dismissed the complaint on the grounds that plaintiffs were guilty of contributory negligence as a matter of law and that they failed to prove a prima facie case. Plaintiff Bass, fellow employee, and president of the corporation which employed the coplaintiffs, testified that the accident was caused by the removal of the agitator shaft which had supported the lid, and the removal of several staves, which weakened the tank's sides, for which plaintiffs were responsible. Nevertheless, there was ample evidence to conclude that the lid had become unsafe from long disuse, causing it to sink in upon the agitator shaft for support. This defect was not visible from the outside and was not apparent from the inside at the time Bass inspected the shaft. Thus, the jury could have found that plaintiffs' acts were performed in ignorance of the dangerous condition and that plaintiffs' ignorance was due to defendant's failure to inspect and to warn. The issue of contributory negligence is almost invariably one of fact for the jury. (*Rossman v La Grega,* 28 NY2d 300, 306; *Wartels v County Asphalt,* 29 NY2d 372, 379.) Whether there was a cautious alternative for plaintiffs to take was a question of fact. (*O'Connell v Epco Prods.,* 37 AD2d 842.) Moreover, defendant as owner of the premises, had a nondelegable duty to provide workmen lawfully on its premises with a safe place to work. (Labor Law, §§ 200, 241; see *Caspersen v La Sala Bros.,* 253 NY 491, 494; *Wohlfron v Brooklyn Edison Co.,* 238 App Div 463, 465, affd 263 NY 547.) Thus, assuming, as Trial Term did, that plaintiffs' employer and foreman were negligent, such negligence would be no bar to a recovery under subdivision 241 of the Labor Law, should the jury find that there was a breach of an independent statutory duty which defendant owed to plaintiffs. (*Koenig v Patrick Constr. Corp.,* 298 NY 313, 318; *Joyce v Rumsey Realty Corp.,* 17 NY2d 118, 122.) Concur—Evans; Sandler and Sullivan, JJ.; Kupferman, J. P., and Lane, J., dissent in a memo by Lane, J., as follows: J. Bass & Sons, Inc. (Bass, Inc.) is a corporation in the scrap metal and dismantling business. Robert Bass was a principal of the corporation, and Derry Pack was an employee. Bass, Inc., was retained to dismantle several tanks located in Peekskill, New York. During the course of the dismantling of one tank, Bass and Pack were injured. The tank being dismantled was circular in shape, eight feet high, and approximately 15 feet in diameter. The tank had a roof and running through the center of the tank, from floor to roof, was a vertical metal shaft of "at least" one inch and probably three inches in diameter. Protruding from the base of the shaft were a series of fins extending approximately three feet. The shaft and the fins were rotated by a motor and were used to stir the contents of the tank. The walls of the tank were made of wooden staves, each being approximately three inches thick and seven inches wide. Each stave was eight feet tall (i.e., the full height of the tank). The circumference of the tank was girdled with metal hoops. Each hoop encircling the tank was fastened to itself with a bolt. The testimony of Bass was that there were 12 hoops spaced eight inches apart girdling the tank. A picture introduced in evidence showing a remaining tank indicated a total of four visible hoops about two feet apart. The floor of the tank was made of concrete and below ground

level there were machines necessary to propel the agitator shaft. The walls of the tank rested on concrete piers sunk in the ground. The roof was made of wood and overhung past the wall circumference approximately seven inches. Bass, as part of his preliminary inspection, walked on the roof and found it to be sturdy; that was in fact his characterization of the entire tank structure. Furthermore, prior to the dismantling of the tank, Bass had come to inspect the premises. He looked into the tank interior through an opening in the side of the roof, which was characterized as a "manhole" 30 inches wide. He ascertained, with the aid of a flashlight, that the interior of the tank was free of any foreign materials. The method of dismantling was selected by the employees of Bass, Inc. It consisted of first removing four of the encircling metal bands and removing five of the vertical wooden staves. This created an opening approximately 35 inches wide and eight feet high. The fins attached to the center shaft were then removed with a cutting torch. The shaft was then cut through in two places. The segment of severed shaft was then to be knocked out, which would result in the shaft being removed. Instead, when the bar was knocked out, the roof fell in, resulting in injuries to Bass and Pack, who were both in the interior of the tank. Bass had 16 years of experience in the dismantling business at the time of this occurrence, and Pack had 18 years of experience. While the job was under control of a foreman employed by Bass, Inc., at the time of the occurrence, Bass was in the interior of the tank watching the progress of the work. Neither he nor Pack made adverse comment with regard to the dismantling method being used. Bass was six feet seven and one-half inches tall and while in the interior of the tank, though he conceded that he could see the roof, he did not look up to examine it. His method of ascertaining the sturdiness of a roof involved standing and walking on it. If it withstood his weight, which was in excess of 200 pounds, he deemed it sturdy. As already mentioned, his preliminary inspection revealed that, in his opinion, the tank was sturdy prior to demolition. A written statement of Bass made about one month after the accident was admitted in evidence. It included his explanation for the accident; namely, that the agitator did not hold the roof in a firm position and the walls were weakened by the dismantling of the planking and removal of the steel hoops, causing the roof to fall. Bass was deemed by his own counsel to be an expert in the field of dismantling and, based on Bass's own statement, the proximate cause of the roof falling in was the weakening of the tank structure by removal of the hoops and a portion of the tank wall by his own employees. Bass entered the tank in its concededly weakened state without objecting or warning his employees of possible danger. The alleged supporting of the roof by the agitator shaft was not proven at trial, since Bass conceded that though he could have examined the roof supports he did not do so. At the end of plaintiffs' case, the court dismissed the complaint, holding that the plaintiffs were guilty of contributory negligence as a matter of law. The court further found that the property owner, Standard Brands (assuming, *arguendo,* that it was the owner of the premises at that time), was not shown by plaintiffs to have been negligent or to have violated any statutory duty towards the plaintiffs. I would affirm the dismissal of the complaint. The plaintiffs' testimony, as outlined, attributed the cause of the accident to a weakening of the tank by plaintiffs' own employees and with Bass' acquiescence. Supervision and control of the method of dismantling were solely in the hands of Bass, Inc. The owner was not shown to be negligent or to have failed to fulfill a duty to the plaintiffs. There was evidence adduced at trial indicating that the tank which collapsed had been in disuse for many years; however, there was

no direct evidence at all that the roof of the tank had become unsafe from disuse or that it had sunk upon the agitator shaft for support. It cannot with plausibility be argued that even an inference of such occurrence could be drawn from the direct evidence adduced at trial. Bass in his own testimony indicated no such occurrence and, in fact, conceded that he did not examine the roof in that regard; nor did the engineer Sharp, who testified on behalf of plaintiff, contribute any direct evidence which would be susceptible of such an inference. Furthermore, the plaintiffs Bass and Pack, experienced as they were in the business of dismantling equipment, were aware, or should have been aware, of the inherent dangers in the method being utilized in dismantling the tank in question. That awareness not acted upon by them constituted contributory negligence on their part as a matter of law. It must be concluded, therefore, that the trial court properly found no evidence or reasonable inference of negligence on the part of the owner of the premises, and further found that the plaintiffs were guilty of contributory negligence as a matter of law. While in the main the issue of contributory negligence is a question of fact to be determined by a jury *(Wartels v County Asphalt,* 29 NY2d 372, 379; *Rossman v La Grega,* 28 NY2d 300, 306), in the case at bar no factual issue is raised. The testimony of the plaintiffs themselves indicates a conscious failure to exercise care with regard to their own safety and participation or acquiescence in acts precipitating the accident. The court under the facts elicited here properly found plaintiffs guilty of contributory negligence as a matter of law *(Lebschi v Pennsylvania R. R.,* 34 AD2d 740). Plaintiffs cannot rely on the Labor Law, either, in order to cast defendant in liability. Section 241 of the Labor Law (as amd in 1962 and in effect at the time of the occurrence) provided, *inter alia,* that an owner, contractor, or subcontractor must provide adequate protection and safety in structures in which demolition work is being performed. In the first instance, Bass confirmed that the structure, prior to demolition, was inspected by him and found to be sound. The owner therefore cannot be held as a matter of law to have breached a duty to plaintiffs. Furthermore, the owner did not control or direct the demolition work and could therefore not be held liable for the injuries incurred *(Kappel v Fisher Bros., 6th Ave. Corp.,* 39 NY2d 1039, 1040; *Tilkins v City of Niagara Falls,* 52 AD2d 306, 311, and cases cited thereat). Accordingly, the judgment of the Supreme Court, New York County, entered May 31, 1978, dismissing the complaint at the end of plaintiffs' case, should be affirmed.