■ ROGER KEEFNER et al., Respondents, v CITY OF ALBANY et al., Appellants. CAMPITO PLUMBING & HEATING, INC. Third-Party Plaintiff-Appellant; BUCHMAN-PISTANA CONSTRUCTION CORP. et al., Third-Party Defendants-Respondents. CITY OF ALBANY, Third-Party Plaintiff-Respondent.—Appeals (1) from a judgment of the Supreme Court, entered April 16, 1979 in Albany County, upon a verdict rendered at a Trial Term, in favor of plaintiffs, and (2) from orders and judgments of the same court, entered April 23, 1979, April 25, 1979, May 2, 1979 and May 22, 1979, which, respectively, dismissed the third-party complaints against the third-party defendants, Rauche Electric Co., Inc., Buchman-Pistana Construction Corp., Einhorn-Yaffee and Crisafulli Brothers Plumbing and Heating. The City of Albany (City) became the owner of a building, then known as the Bodner Oldsmobile Building, on Central Avenue and let contracts for the work to renovate the premises for the Albany Police Department, for office space and to store police vehicles. The firm of Einhorn-Yaffee was hired to perform the architectural services. Separate contracts were entered into with four prime contractors. Campito Plumbing and Heating, Inc. (Campito) contracted to do the heating, ventilating and air-conditioning work. Buchman-Pistana Construction Corporation (Buchman-Pistana) was engaged to do the general construction work. Crisafulli Brothers Plumbing & Heating (Crisafulli) was hired to perform plumbing work and Rauche Electric (Rauche) was to do the electrical work. Plaintiff Roger Keefner was employed as a carpenter by Buchman-Pistana. On March 19, 1975, at around 7:30 or 7:45 A.M., he entered the premises carrying his toolbox, which weighed 50 to 60 pounds. Another carpenter, his co-worker, entered the building just ahead of him. Keefner stopped to tie his shoelace and the co-worker proceeded to the rear portion of the building, where they were to do the carpentry work. As Keefner turned left to walk to the rear of the building, he observed broken concrete and other materials to his right. He saw a pool of oil, about two to three feet in width, on the floor in front of him. He attempted to take a long step over the oil, to avoid it, but struck the oil with his heel, slipped and fell to the floor. As he got up from the

floor, he noticed a pipe threading machine about five feet from where he fell. He said the oil seemed to be coming from underneath the threading machine. However, he did not inspect the area around the machine and he did not see anyone at the pipe threading machine at that time. He was able to get up, advised his co-worker of his fall and his pain, and proceeded home. Keefner and his wife sued the City and Campito. Campito and the City cross-claimed against each other for indemnity. Campito commenced a third-party action against Buchman-Pistana and Rauche. The City instituted a third-party action against Buchman-Pistana, Crisafulli and Einhorn-Yaffee for indemnification. At the close of the proof during the jury trial, the trial court dismissed all of the third-party actions. The jury found for the plaintiffs against both defendants, Campito and the City. Roger Keefner was awarded $330,000 and his wife $35,000 for her derivative cause of action. The trial court granted a motion by the City for judgment over against Campito. Both defendants have appealed. The judgment should be affirmed.

Several issues are raised by appellants. These will be discussed to the extent required. Appellant Campito, first, asserts that trial court erred in not finding Roger Keefner contributorily negligent as a matter of law. We disagree. This question, as regards the common-law negligence action against Campito, was properly left to the jury. Whether there was a cautious alternative for plaintiff to take was a question of fact (*Bass v Standard Brands*, 65 AD2d 689). The other workman who entered the building with Keefner proceeded through the same area safely. Donald Slowek, supervisor for Buchman-Pistana, testified that he passed through the area two hours later and walked to the right of the oil spill. The selection of one alternate route over another is not negligence as a matter of law, but creates a factual issue for the jury (*Wozniak v 110 South Main St. Land & Dev. Improvement Corp.*, 61 AD2d 848, 849). The plaintiff said he saw the oil and then decided to step over it without any problem. Under the circumstances it cannot be said that his conduct fell "below the standard to which he should conform for his own protection" (*Hunt v Schultz*, 21 AD2d 743). Next, it is contended that Campito was entitled to dismissal of the complaint at the close of the proof, as a matter of law, for plaintiff's failure to prove any negligence on the part of Campito. It is clear that such motion should not be granted unless the court is satisfied that by no rational process could the jury find in favor of the nonmoving party on the evidence presented (*Rhabb v New York City Housing Auth.*, 41 NY2d 200; *Newland v Juneau*, 62 AD2d 1125; *Cox v Don's Welding Serv.*, 58 AD2d 1013). In the instant case there was evidence that Campito's employees were working in the area on the day of the accident; that no other contractors were working in the area on that day; that Campito had a pipe threading machine on the job that day located just inside the entranceway on the left; and that the machine used oil in the process of cutting and threading. Additionally, Donald Slowek stated he observed the can of oil that had spilled over near a pipe threader in the area and that the oil spill ran across the floor because the floor sloped. The oil can was rectangular with a screw top and was labeled "cutting oil". Further, Donald Slowek testified that after he saw the oil spill, he went to Campito's foreman and personally told him he should clean up the oil and that the foreman said nothing in reply. The oil spill, however, was thereafter cleaned up. It was also established that each contractor was responsible for keeping his work area cleaned up and in good order. The silence of the Campito foreman in such circumstances can be considered a tacit admission that Campito's employees were responsible for the oil spill (Richardson, Evidence [Prince, 10th ed], § 222). On this proof,

the jury could reasonably conclude that the pipe threading machine in the area of the accident belonged to Campito, that the spilled oil belonged to Campito and that the spill was caused by Campito's employees. Campito next argues that photographs of a model 535 pipe threading machine should have been admitted into evidence. However, no one was able to testify that the photographs were of the pipe threading machine that Campito had placed and used at the job site. Thus, a proper foundation had not been laid for their admission and there was no error in their exclusion. We now turn to the City's contention that the work performed was renovation and, therefore, not construction, demolition or excavation within the ambit of subdivision 6 of section 241 of the Labor Law. In rejecting this, we note that the record is replete with testimony that the renovation work was merely demolition and construction of parts of an existing building. The purpose of section 241 of the Labor Law is to protect workmen (NY Legis Ann, 1969, p 407). The safe place to work laws have been given a liberal interpretation to accomplish such purpose (see *Page v State of New York,* 73 AD2d 479; *Rusin v Jackson Hgts. Shopping Center,* 58 Misc 2d 107, 110, affd 33 AD2d 734, revd on other grounds 27 NY2d 103). We do so here. The trial court correctly refused to instruct the jury that before liability can be imposed under subdivision 6 of section 241 of the Labor Law, the owner must have a reasonable opportunity to correct the condition that caused the accident. The Court of Appeals has held that this section imposes a nondelegable duty on a noncontrolling owner of a construction site *(Allen v Cloutier Constr. Corp.,* 44 NY2d 290). The statute "fashions absolute liability upon an owner" *(Allen v Cloutier Constr. Corp.,* 44 NY2d 290, 300, *supra;* see, also, *Long v Forest-Fehlhaber,* 74 AD2d 167). We have considered the arguments advanced by appellants urging that the trial court erroneously dismissed the third-party complaints at the conclusion of the proof and find no error. The record supports the trial court's conclusion as to each third-party defendant. Likewise, we find that the trial court committed no error in permitting the case to go to the jury on the theory of violation of subdivision 6 of section 241 of the Labor Law without amendment of the complaint. Finally, we turn to defendant Campito's claim that the verdicts were excessive as a matter of law. In determining this question, we have held that: "In ascertaining whether or not a verdict is excessive, consideration must be given to the nature and extent of the injuries; whether or not they are permanent; the extent of the pain, past, present and future; and what effect the lasting injury has had or will have in the future" *(Riddle v Memorial Hosp.,* 43 AD2d 750, 751). Dr. Albano, an orthopedic surgeon who treated Keefner, testified that in May, 1975, there was evidence to substantiate plaintiff's complaint of pain. Keefner's spine did not bend in a proper curve, thus limiting his ability to pursue normal activities. He testified further that Keefner would be unable, with such a condition, to work as a carpenter or a mason. Dr. Jabbur, another orthopedic surgeon who also treated Keefner, testified that he found that Keefner has moderate permanent disability in respect to his back and could not do any work that would require bending and lifting, and he foresaw no change in Keefner's condition in the future. Keefner had been employed as a carpenter for about five years and for the year before the accident he was earning $320 per week. His future life expectancy was another 38.51 years at the time of trial. He had worked only briefly since the time of the accident, and had to quit painting cars because it was too painful. In view of the seriousness of the injuries and the resultant adverse affects therefrom caused to each of the plaintiffs, the individual awards are "not so excessive as to shock the conscience of the

court" (Starks v Poulein, 57 AD2d 645). Judgments and orders affirmed, with one bill of costs to respondents filing briefs. Greenblott, J. P., Sweeney, Main, Mikoll and Herlihy, JJ., concur.