Order, Supreme Court, New York County (Carol R. Edmead, J.), entered October 28, 2009, which granted defendant VerTech’s motion for summary judgment dismissing the complaint and all cross claims against it, and denied plaintiffs cross motion for partial summary judgment against defendant OTA, affirmed, without costs.
Ver-Tech, an elevator service contractor, established prima facie its entitlement to summary dismissal of a hotel guest’s negligence action and all cross claims against it by proving that it had no prior notice of any defective condition of the subject elevator and that it regularly maintained and inspected that elevator (see Santoni v Bertelsmann Prop., Inc., 21 AD3d 712, 713 [2005]). In opposition, plaintiff failed to raise a triable issue of fact whether the elevator, which had stopped after its governor switch was tripped, was functioning properly. Although the circumstances that prompted the governor switch to trip remained unresolved, to infer negligence on the part of VerTech in the face of evidence establishing that the switch required no repair and was otherwise fully operational would be speculative (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Even assuming, arguendo, an issue of fact exists as to VerTech’s negligence in connection with the elevator’s stalling midway between two floors in the hotel, there is no evidence that that negligence was a proximate cause of plaintiffs injuries. Plaintiff was uninjured when the elevator stopped, with no indication of an emergency situation. The injury occurred after he attempted to exit the elevator using a method he felt best accommodated his preexisting knee condition and his 360-pound frame. Plaintiff slid backward out of the elevator, even after hotel employees advised that he sit forward on the edge of the elevator floor and jump down onto the second-floor level. As he *471 slid backward, he became fatigued, lost his grip, and slipped under the elevator car, into the open shaftway below. The hotel employees who were there to assist plaintiffs evacuation failed, among other things, to block the open shaftway and to grab hold of him as he fell. On this record, the intervening, ill-advised and negligent actions of both plaintiff and the hotel employees were not foreseeable, in the ordinary course of events, as arising from a stalled elevator. Plaintiffs injuries arose from a superseding cause, severing any potential liability on the part of Ver-Tech (see e.g. Egan v A.J. Constr. Corp., 94 NY2d 839, 841 [1999]).
Reliance upon the doctrine of res ipsa loquitur is misplaced, since plaintiff did not establish that Ver-Tech had exclusive control of the elevator (see Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226 [1986]).
As to OTA, while we agree with the dissent that there is substantial evidence of OTA’s negligence, issues of fact as to comparative fault preclude summary judgment in favor of plaintiff. On this record, there are issues of fact as to, among other things, whether plaintiffs injury was in part attributable to his decisions to exit the elevator and to do so in the manner in which he did, despite the apparent absence of an emergency at the time. Concur—Friedman, Nardelli, Freedman and AbdusSalaam, JJ.
Saxe, J.B, dissents in part in a memorandum as follows: While I agree with my colleagues that the action was properly dismissed as against defendant Ver-Tech, I submit that plaintiffs cross motion for partial summary judgment against the owner of the hotel should have been granted. The actions of OTA Hotel’s employees constitute unassailable grounds for holding the hotel liable for plaintiffs severe injuries.
Plaintiff Gary Meade and other members of his family were guests at defendant hotel, located at 77th Street and Broadway in Manhattan. On several occasions during their stay there the Meades had used two of the building’s four elevators to reach their fourth-floor rooms without any problem until the incident at issue here. On their way to visit friends outside of the hotel, plaintiff, his father and his sister entered one of the elevators and pressed the “Lobby” button. The doors closed normally and the elevator began to descend slowly, but stalled between the second and third floors; the door of the elevator did not open.
Plaintiff and his father and sister pressed the elevator’s alarm button, which worked properly. Luis Santana, a hotel security guard stationed in the lobby, heard the alarm and immediately contacted another on-duty security guard, Drinton Krasniqi, by *472 walkie-talkie. Krasniqi was already aware of the alarm and had alerted the hotel’s on-duty engineer, Andrew Sotero.
After about five minutes from the time the elevator stalled, Krasniqi arrived on the second floor and spoke to the Meades through the closed elevator doors. Sotero arrived next and opened the elevator doors at the second floor. The floor of the elevator car was several feet above the second floor landing, creating a large gap directly beneath the floor of the elevator car, exposing the elevator shaft, which descended several floors to the hotel’s basement.
Although none of the passengers in the elevator appeared to be injured or in danger, Sotero and Krasniqi decided to attempt to extricate the trapped passengers from the elevator car. Notably, according to Krasniqi, the hotel did not have any set procedures on how to evacuate guests from an elevator. Sotero and the hotel’s director of security, Daniel O’Brien, testified that since the gap between the elevator floor and the second floor was more than 24 inches, the hotel’s procedure dictated that they call 911, which they admittedly did not do.
The hotel workers first instructed plaintiffs sister, Sarah Meade, to exit. They told Sarah to sit on the elevator floor with her legs hanging over the second-floor hallway, and then to jump. Sarah did as instructed, and fell forward when she reached the second-floor landing, but was uninjured.
Plaintiff, who weighed 360 pounds and had a preexisting knee injury, declined to jump forward as his sister had done. He told the workers he was going to back out of the elevator and that he needed their assistance in grabbing him and pulling him backwards. He proceeded to lie face down on the elevator floor with his legs toward the open elevator door, then move backward out of the elevator, legs first. When plaintiff got to the point where only his torso rested on the elevator floor, he became fatigued and asked whether the workers had control of him. He claimed that the workers assured him that they had him. Plaintiff soon thereafter lost his grip. His legs swung into the open gap, and he fell backward out of the elevator car, first striking his back against the edge of the second floor, then falling down the elevator shaft.
Sotero acknowledged in his deposition testimony that there was a ladder and plank board readily available in the hotel’s basement that could have been used to block the elevator shaft opening. Santana, too, recognized at deposition that use of the ladder and wood from the hotel’s basement might have prevented plaintiffs fall, and that the hotel employees at the scene should not have disregarded the elevator shaft opening.
*473 Nothing in the evidentiary materials submitted indicates that anyone instructed the Meades that it would be dangerous to jump out of the elevator car or advised against it. The only evidence is to the contrary.
Plaintiffs claim against the hotel is based on the theories that its employees were not properly trained, there were no oral or written procedures in place regarding elevator evacuation, an available ladder was not provided, the open shaftway was not guarded, and the employees failed to assist him in getting down from the elevator. He also submitted an affidavit from Thomas Davies, an expert in elevator safety, who asserted that the hotel failed to follow standard procedures and protocol in evacuating the Meades from the elevator. Davies observed that the hotel did not have a written emergency evacuation plan, and that it failed to contact 911 or appropriate emergency personnel before it attempted to extricate the Meades, and asserted that the hotel should not have undertaken the evacuation of the elevator’s occupants without proper tools and equipment, such as a ladder and plank board to guard the open elevator shaft.
All of the foregoing assertions are unassailable. The hotel’s employees should have called 911 and waited for assistance. They should not have proceeded with removing the elevator’s trapped occupants without first covering the opening to the elevator shaft and retrieving a ladder. Because the hotel owner had a nondelegable duty to maintain the elevators (see Rogers v Dorchester Assoc., 32 NY2d 553, 562 [1973]), its liability is irrefutable.
Nor do I agree with the motion court that the plaintiff may be found to bear some liability for his injuries, necessitating the denial of his motion for partial summary judgment against the hotel.
Comparative negligence is “conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard to which he is required to conform for his own protection” (Sundt v New York State Elec. & Gas. Corp., 103 AD2d 1014, 1015 [1984] [internal quotation marks and citation omitted], appeal dismissed 63 NY2d 771 [1984]). The question of comparative negligence “comes down to whether a reasonable man” would have acted as the plaintiff did in the situation under consideration (id.). The burden is on defendant to establish comparative negligence, and “the injured person is presumed to have used due . . . care” in his actions (Rossman v La Grega, 28 NY2d 300, 304 [1971] [internal quotation marks and citation omitted]). While the apportionment of liability and comparative negligence ordinarily present ques *474 tions for jury resolution, it may be decided as a matter of law where, based on the evidence, no valid line of reasoning permits the conclusion that the plaintiff was negligent (see Perales v City of New York, 274 AD2d 349, 350 [2000]).
In the face of the obvious grounds for a finding of liability against the hotel, the hotel’s claim of comparative negligence borders on specious. It was not the task of plaintiff, a guest at the hotel, to inform hotel employees as to hotel procedures in the event an elevator got stuck. It was not within plaintiffs knowledge, as a hotel guest, whether more or better trained assistance would be arriving any time soon. It was assuredly not the task of the hotel guest stuck in that elevator to discern the gap directly beneath the floor of the elevator, in order to ascertain how to best protect himself from falling into the elevator shaft in the course of descending to the landing below. Indeed, I can only wonder at the hotel’s suggestion, in opposition to plaintiffs cross motion, that the open shaft condition would have been “open and obvious” to plaintiff, as he sat directly above it.
I further reject the argument that a finding of comparative negligence on plaintiffs part may arise out of his decision to back out of the elevator rather than follow the instructions of the hotel staff to sit facing forward and jump. Since he lacked the knowledge of the gap, which was exclusively known to those on the floor, plaintiff had every reason to assess the means of descent that would be least likely to injure his knees on impact, and to modify accordingly the method suggested by defendants’ employees, who had not considered his particular concerns when recommending a method of descent. Plaintiffs modification of the recommended method bears no comparison to the negligence of an occupant trapped in a misleveled elevator who rushed out in a panic as soon as the doors were manually opened, and tripped due to the misleveling (see Del Terzo v City of New York, 189 AD2d 556 [1993]). Nor was plaintiffs situation comparable to that of an experienced worker who should have known that he should wait for the engineer to restart the elevator (see Antonik v New York City Hous. Auth., 235 AD2d 248 [1997], lv denied 89 NY2d 813 [1997]), or that of an elevator occupant who should have known that he should wait in the elevator car because he had been instructed that help was on the way (see Jennings v 1704 Realty, L.L.C., 39 AD3d 392 [2007]).
While plaintiffs actions arguably may have contributed in some way to his injury, there was nothing about those actions that may properly be termed negligent. Accordingly, there was no ground for a finding of comparative negligence that would *475 contraindicate plaintiffs right to partial summary judgment against the hotel. I would therefore modify the motion court’s order in that respect.