ADOLFO BIZARRO, Special Adm'r of the Estate of Bertha Bizarro, Deceased, Plaintiff-Appellee, v. DANNY ZIEGLER *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—91—2849, 1—91—2955 cons.

Opinion filed September 24, 1993.—Rehearing denied January 26, 1994.

Williams & Montgomery, Ltd., of Chicago (Michael LaBarge, Ginamarie A. Gaudio, Barry Kroll, and Lloyd E. Williams, Jr., of counsel), for appellants.

John G. Phillips & Associates, of Chicago (Stephen Phillips, Paul Wolf, and J.W. Mitchell, of counsel), for appellee.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Plaintiff, as administrator of the decedent's estate, brought a wrongful death action after defendants' truck struck and killed decedent as she was standing on a highway next to a disabled car. The jury returned a verdict for plaintiff, but reduced the award by 25%, finding contributory negligence on the part of decedent. Plaintiff filed a post-trial motion for a judgment notwithstanding the jury's finding of contributory negligence. The trial court granted the motion and reinstated the full award. After the trial judge granted plaintiff's motion, defendant H & F Trucking sought leave to file a post-trial motion which the trial court denied as untimely with respect to all issues other than decedent's contributory negligence. On appeal, defendants argue that the trial court erred in ruling as a matter of law that decedent was not guilty of contributory negligence and in denying them leave to file a post-trial motion on all issues after the judgment notwithstanding the jury's finding had been entered. For the reasons stated below, we affirm in part and reverse in part.

FACTS

The relevant facts underlying this wrongful death action which were adduced at trial are as follows. On the evening of June 25, 1984, Bertha Bizarro (decedent) was riding as a passenger in a car which was travelling eastbound on Interstate 90 at approximately 1 a.m. The weather was clear and the visibility excellent. For undetermined reasons, the wheel of the car came off and the car spun around. It came to rest facing west at an angle, with the front portion of the car in the left of the two eastbound lanes of traffic.

David Johnson was also travelling eastbound on Interstate 90. When he saw the disabled vehicle, he veered to the right, braked abruptly and then pulled over to the right side of the road about three or four car lengths past the disabled vehicle. Johnson said that he saw two vehicles ahead of his pass the disabled vehicle without incident, one on its right and one to its left.

After pulling over onto the right shoulder, Johnson backed up his car and put on his flashers. As he backed up, he saw the headlights of an oncoming truck approaching. He was beginning to exit his car when he saw the truck strike the right front of the disabled car. At

no time prior to impact did Johnson see anyone in the disabled car or on the roadway. After the impact, Johnson went over to the disabled car and helped its driver, who was exiting the car at that time. The driver suffered an injury to her kneecap and facial cuts as a result of the collision. She was treated for these injuries at a hospital and released that same night.

The truck which struck the decedent was driven by Danny Ziegler. Ziegler stated that immediately before he struck the disabled car he saw the decedent standing about three or four feet from the passenger door of the car. Decedent's body was subsequently found on the grass median separating the east and westbound lanes of traffic approximately 86 feet from the point of impact. From these facts, the officer investigating the accident agreed that decedent was standing outside the car at the time of impact.

Ziegler's truck, which weighed 78,000 pounds, left skid marks which began 479 to 484 feet before the point of impact with the disabled vehicle and extended past the point of impact. These skid marks indicated that the truck was travelling between 73 and 83 miles an hour before the brakes were applied. It would take a truck approximately nine seconds to skid 500 feet.

At the close of evidence, plaintiff moved for a directed finding on the issue of the decedent's contributory negligence which the trial court denied. On May 17, 1991, the jury returned a verdict in favor of plaintiff in the amount of $715,000, but reduced the award by 25% finding that decedent was guilty of contributory negligence. On that day, the trial judge said that he would enter judgment on that verdict and the judgment was subsequently recorded in the law record book.

On June 14, 1991, plaintiff filed a post-trial motion for a judgment notwithstanding the jury's finding of contributory negligence, alleging that the trial judge erred in submitting the issue of decedent's negligence to the jury because there was insufficient evidence to support such a finding. On July 31, 1991, the trial court granted plaintiff's post-trial motion and reinstated the entire $715,000 verdict, stating that he was entering judgment in that amount on that day. A judgment order to that effect was entered on August 7, 1991.

On August 12, 1991, defendant H & F Trucking sought leave to file a post-trial motion pursuant to section 2—1202(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(c)). The trial court denied defendant's request for leave with respect to any issue other than those related to the judgment notwithstanding the jury's finding of contributory negligence. Defendants now appeal.

OPINION

Defendants' first contention on appeal is that the trial court erred in entering a judgment notwithstanding the jury's finding of contributory negligence. We note at the outset that in entering its judgment, the trial court stated that the jury's verdict was against the manifest weight of the evidence. The manifest weight of the evidence standard, however, is inapplicable to such a determination. The appropriate standard for entering a judgment *n.o.v.* is that established in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, where the Illinois Supreme Court stated:

"In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick*, 37 Ill. 2d at 510.)

(See also *Hicks v. Donoho* (1979), 79 Ill. App. 3d 541, 399 N.E.2d 138.) The issue before us then is whether the aforementioned facts mandate a finding that plaintiff was not guilty of contributory negligence as a matter of law. We hold that they do not.

Whether plaintiff acted with due care is a question for the jury to determine based on the facts of the particular case. (*Jines v. Greyhound Corp.* (1965), 33 Ill. 2d 83, 210 N.E.2d 562.) A plaintiff is "contributorily negligent when she acts without that degree of care which a reasonably prudent person would have used for her own safety under like circumstances, and which action is the proximate cause of her injury." (*Blacconeri v. Aguayo* (1985), 132 Ill. App. 3d 984, 988, 478 N.E.2d 546.) Our supreme court has expressed its reluctance to set forth hard and fast rules as to which actions constitute contributory negligence as a matter of law, favoring instead a flexible approach.

" 'There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances.' [Citation]." *Pienta v. Chicago City Ry. Co.* (1918), 284 Ill. 246, 252, 120 N.E. 1.

Plaintiff argues that decedent was not guilty of contributory negligence as a matter of law because she had no choice but to flee the disabled car stranded in the middle of the highway which was about to be struck by defendant's truck. (See, *e.g., Hess v. City of Chicago*

(1981), 101 Ill. App. 3d 426, 428 N.E.2d 581; *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 398 N.E.2d 360.) However, the questions of whether plaintiff had a choice of routes and, if she had, whether she chose a safe or an unsafe route are questions of fact properly submitted to the jury. (*Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 125 N.E.2d 47; *Blacconeri*, 132 Ill. App. 3d 984, 478 N.E.2d 546.) In analyzing plaintiff's actions, we are cognizant that a "person suddenly placed in a position of real or apparent danger is not required to exercise the same degree of care for his or her safety as would be required if he or she had ample opportunity to make a considered judgment." (*Borus v. Yellow Cab Co.* (1977), 52 Ill. App. 3d 194, 200-01, 367 N.E.2d 277; 65A C.J.S. *Negligence* §123 (1966).) As the court in *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 398 N.E.2d 360, explained:

> " ' "[A] party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind ***." *** [Plaintiff] had to act in a sudden emergency, and his act is not to be viewed in the light of after events but judged under all the circumstances by the standard of what a prudent person would have been likely to do under the same circumstances.' " *Lesperance*, 79 Ill. App. 3d at 141, quoting *Skala v. Lehon* (1930), 258 Ill. App. 252, 258-59, quoting *Wesley City Coal Co. v. Healer* (1876), 84 Ill. 126, 129.

Decedent's position in a place of potential danger or emergency, however, does not mandate a finding that she was free of contributory negligence as a matter of law; any actions taken on her part which were unreasonable in light of the surrounding circumstances would not be excused because she was in such a place of potential danger. In this respect, we find the New York Court of Appeals decision in *Rossman v. La Grega* (1971), 28 N.Y.2d 300, 321 N.Y.S.2d 588, persuasive. There, the court held that a jury question existed as to whether decedent was guilty of contributory negligence. The decedent in *Rossman* was a passenger in a car on an expressway which developed a flat tire. The driver drove the car to the extreme right lane and decedent exited on the right side of the car. The driver told decedent to remain with the car, stand up against the left door, and wave traffic away from the car. (*Rossman*, 28 N.Y.2d at 302, 321 N.Y.S.2d at 590.) Decedent was subsequently struck and killed by a passing car while standing there.

The *Rossman* court held that " '[w]hether his act was "foolhardy or reasonable in the light of the emergency confronting him" is a jury question.' " (28 N.Y.2d at 304, 321 N.Y.S.2d at 592, quoting *Wagner*

632

*v. International Ry. Co.* (1921), 232 N.Y. 176, 182, 133 N.E. 437, 438.) The court expounded on the unenviable position of the decedent:

"If one puts himself in [decedent's] situation after [the] flat tire, it will be seen that his choice of action was extremely limited. He was not then a man who had a choice of sitting safely in his living room or going out in the street into traffic danger. He was in a situation of acute danger no matter what he did unless he walked well away from the car and got off the road.

If he sat in the car he would have been in danger; if he stood in back of it without a flashlight *** he would have been in danger. Had he walked 30 or 40 feet back and attempted to wave off traffic, as people are frequently seen to do along expressways, he would also have been in danger without a flashlight. It did not necessarily add much to the peril by standing as [the driver] told him to do, near the left door of the car and waving down traffic.

* * *

It is not easy to say just what would be the right thing to do to help guard against danger caused by the stalled car. It is not a situation open to dogmatic answers after the event. It is, at least, reasonably arguable; and if it is arguable it ought not be held as a matter of law that the [decedent] was negligent ***." *Rossman,* 28 N.Y.2d at 308-09, 321 N.Y.S.2d at 595.

■■ We agree that in this case, as in *Rossman,* plaintiff was left with several choices, all of which arguably involved some degree of potential danger. This being the case, it is for the jury to draw the appropriate inferences from the facts presented to determine whether decedent exercised due care when she left the vehicle, or whether due care required her to remain in the car or exit the car sooner or in a different manner. (*Rossman,* 28 N.Y.2d 300, 321 N.Y.S.2d 588; *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168.) Taking into account those factors that decedent knew or could have known when she made her fatal election to exit the car (*Ashby v. Price* (1983), 112 Ill. App. 3d 114, 445 N.E.2d 438), we determine that the jury could have inferred that decedent was guilty of contributory negligence.

First of all, the jury could have inferred that the disabled car offered decedent greater protection than the open highway, even if she knew the car would be struck by the truck. In this respect it should be noted that the driver of the disabled vehicle who remained in the vehicle suffered a minimal amount of injury whereas plaintiff was killed almost immediately when she was struck directly by defendant's

truck. (See *Jines v. Greyhound Corp.* (1965), 33 Ill. 2d 83, 210 N.E.2d 562.) There, plaintiff "left a place of comparative safety" and reentered a car that was stalled on the highway to dry his legs and look for a flashlight. When he did so, he knew that at least eight cars had passed the car without incident, that his brother was behind the car attempting to direct traffic, that there was adequate room to pass the vehicle on the left, that there was a lighted flare on the highway in back of the car, and that the car was visible. The Illinois Supreme Court determined that the issue of plaintiff's contributory negligence was properly submitted to the jury.

Moreover, the jury could have inferred that the car provided greater safety because it was more visible. The disabled car's headlights were intact and shining. Three cars were able to successfully avoid the disabled car after seeing its headlights. After plaintiff left the car, she could no longer enjoy the benefit of the increased visibility it provided. Considering the time of night, the jury could have inferred that decedent contributed to the accident by leaving an area which other drivers could identify as a potential hazard. We note in this respect that Johnson never saw plaintiff on the highway at any point and that Ziegler did not see decedent until the moment of impact. Although possibly a product of a relatively late exit from the disabled vehicle by decedent, the fact that she was not seen earlier could also have been readily attributable to the darkness of the evening coupled with the fact that she was standing behind the headlights of the car.

The case of *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, 411 N.E.2d 1168, is also in point. That case involved a plaintiff that was left with a choice of two alternatives, walking over an icy sidewalk or navigating her car over an icy narrow driveway. The court held that the issue of plaintiff's contributory negligence could not be determined as a matter of law just because she chose to use an ice-covered sidewalk to enter a building rather than parking her car and entering through that entrance. The court recognized that "[i]t is not decisive that a safer course of action may have been available or that the course chosen entailed certain hazards." (*Schoondyke*, 89 Ill. App. 3d at 646.) Rather, the "crucial issue is whether the choice of action was unreasonable." *Schoondyke*, 89 Ill. App. 3d at 646; see also *Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 380 N.E.2d 863; *Little v. Scheu* (1968), 99 Ill. App. 2d 421, 241 N.E.2d 702 (affirming jury's finding that plaintiff was guilty of contributory negligence when plaintiff chose to attempt to complete

crossing street after traffic light changed instead of waiting on safety island located in the middle of the street).

Just as in *Schoondyke, Jines* and *Rossman*, where the courts could not say that plaintiffs' choices of action were unreasonable as a matter of law, we cannot say that plaintiff's choice of action here was reasonable as a matter of law. In essence, the jury could have determined that decedent placed herself in a much greater peril by exiting the disabled vehicle when and in the manner she did. If the oncoming traffic could not stop short, as was the case with Ziegler's truck, it would be forced to maneuver to the left or to the right of the disabled vehicle. By exiting the car and standing on the highway to the car's left, the decedent placed herself directly in one of the two possible lanes which drivers would have to use to avoid colliding with the disabled vehicle. (See *Vokroy v. Johnson* (1964), 233 Md. 269, 273, 196 A.2d 451, 453 (finding deceased who was struck and killed by defendant motorist while standing on a highway after working on a stalled car was guilty of contributory negligence as a matter of law as he left his place of safety and moved into the path of defendant's automobile; decedent "knew, or should have realized, he was at best in a dangerous position standing at his car, as he was, on the highway. His knowledge of the presence of an approaching car, with the lights shining, was as great or greater than [defendant's] knowledge of the location and details concerning the stalled car and the attendant people cloaked in the darkness").) The decision, as to whether decedent's actions in leaving the disabled vehicle, with its accompanying visibility and added protection, and stepping out unprotected onto a dark highway into one of the only two potential paths oncoming traffic would use to avoid that vehicle in the face of the approach of such oncoming traffic, was one for the jury.

■ Plaintiff also argues that the trial judge was correct in setting aside the jury's finding of contributory negligence because there was no evidence that plaintiff's negligence was the proximate cause of the accident. (See, *e.g.*, *Old Second National Bank v. Baumann* (1980), 86 Ill. App. 3d 547, 408 N.E.2d 224.) At its very essence, plaintiff's argument is that as the disabled car would be struck by defendant's truck anyway, there would have been an accident regardless of plaintiff's actions. While there still may have been a collision, it was certainly within the jury's province and ability to determine whether plaintiff's conduct in placing herself unprotected in the path of oncoming traffic directly contributed to the fact that she sustained injury as a result of the collision and, even more particularly, the extent and nature of those injuries. (*Cf. Guy v. Steurer* (1992), 239 Ill. App. 3d

304, 309, 606 N.E.2d 852 (upholding jury's finding that plaintiff was guilty of contributory negligence despite fact that defendant failed to yield right of way and plaintiff's claim that accident was an "unavoidable collision" where plaintiff could have reduced his speed, honked his horn, or changed lanes to avert the accident).) We therefore conclude that the trial court erred in setting aside the jury's finding on the issue of contributory negligence.

Defendants' second contention on appeal is that the trial court erred in denying as untimely defendant H & F Trucking's post-trial motion with respect to issues other than those involved with the judgment notwithstanding the jury's finding of contributory negligence. The timeliness of post-trial motions is governed by section 2—1202(c) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(c)), which provides:

> "Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof. A party against whom judgment is entered pursuant to post-trial motion shall have like time after the entry of the judgment within which to file a post-trial motion." Ill. Rev. Stat. 1991, ch. 110, par. 2—1202(c).

See also *Neiman v. City of Chicago* (1962), 37 Ill. App. 2d 309, 185 N.E.2d 358.

The critical determination with respect to this issue is at what time was the judgment entered. Defendants argue that although the trial judge said in open court that judgment would be entered on the jury's verdict, in fact, judgment was not entered at that time. Rather, defendants contend that judgment was not entered until August 7, 1991, when the trial court entered its written order on plaintiff's motion for a judgment notwithstanding the jury's finding of contributory negligence. We disagree.

Illinois Supreme Court Rule 272 addresses when a judgment is entered. This rule provides:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record

promptly, and the judgment is entered at the time it is entered of record." 137 Ill. 2d R. 272.

■■ Here, there was no written judgment form or draft order which the court required the parties to submit. Consequently, the second portion of this rule controls and the judgment will be considered entered "at the time it is entered of record." Interpreting this same portion of Rule 272, the appellate court in *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74, held that an entry of judgment in the law record complied with the second portion of Rule 272. (*Scott*, 26 Ill. App. 3d at 984.) The court reasoned:

"Unlike a written judgment order, the court's minutes are not found in the file of the case, nor are they readily available to the public at a centralized location. The law record, on the other hand, is conveniently located for the benefit of the litigants and interested parties, and it is the document relied upon by the clerk's office in making up the record on appeal. Accordingly, under Supreme Court Rule 272, we hold that when the trial judge does not require the submission of a written judgment order, a judgment is entered of record when it is recorded in the law record book. Generally this entry will be made either the same or following day of the oral pronouncement of judgment and its entry into the minute book. In any event, the judgment is of record only at the time of the actual entry in the law record book." *Scott*, 26 Ill. App. 3d at 983-84.

The judgment in this case was entered into the law record and dated May 17, 1991. Defendant's post-trial motion as to issues other than decedent's contributory negligence was not filed until August 12, 1991, almost three months after the judgment was entered into the law record and well after the expiration of the 30-day period provided in section 2—1202(c). In this respect, defendant's post-trial motion was untimely.

In the alternative, defendants contend that section 2—1202(c) specifically allows any party to file a post-trial motion of its own when a judgment is entered against that party pursuant to a post-trial motion. According to defendants, this section does not limit the issues which may be raised in the party's subsequent post-trial motion after judgment was entered against it on a post-trial motion.

■■ We disagree with defendants' interpretation of section 2—1202(c). Although section 2—1202(c) does not expressly limit the issues which may be raised in a party's post-trial motion filed after a judgment has been entered against it pursuant to a post-trial motion

to those issues raised in the original post-trial motion, such an interpretation is consistent with the section's unequivocal language establishing the 30-day time period and its language on the need to obtain extensions from the trial court for any additional filing time. (See *Sears v. Sears* (1981), 85 Ill. 2d 253, 422 N.E.2d 610.) Sanctioning this type of delayed attack on the trial court's judgment would be inconsistent with the dictates of our supreme court. Speaking in the context of successive post-trial motions, the Illinois Supreme Court stated:

> "There must be finality, a time when the case in the trial court is really over and the loser must appeal or give up. \*\*\* And justice is not served by permitting the losing party to string out his attack on a judgment over a period of months, one argument at a time, or to make the first motion a rehearsal for the real thing the next month. In the interests of finality, and of certainty and ease of administration in determining when the time for appeal begins to run, we reaffirm the rule \*\*\* that successive post-judgment motions are impermissible when the second motion is filed more than 30 days after the judgment or any extension of time allowed for the filing of the post-judgment motion." *Sears*, 85 Ill. 2d at 259.

Defendant's decision to await the trial court's resolution of plaintiff's motion for a judgment notwithstanding the jury's finding of contributory negligence before filing its own post-trial motion on other issues was a strategic one and it must accept the consequences of its decision. Nothing precluded defendant from filing its motion within the 30-day period or in obtaining an extension from the trial court. We think it unwise to permit a party to raise any and all issues, however unrelated to the judgment entered by the trial court on the initial post-trial motion, in a subsequent post-trial motion filed well after the expiration of the statutorily established period, especially in a case such as this one where defendant was free to raise these issues within the appropriate time. We therefore conclude that the trial court did not err in denying defendant's post-trial motion on issues other than decedent's contributory negligence.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

MURRAY and McNULTY, JJ., concur.