2024 IL App (1st) 231469

FIRST DISTRICT
SECOND DIVISION
June 11, 2024

No. 1-23-1469

| | | |
|---|---|---|
| REGINA ROCHA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 L 12974 |
| MUNSON SKI & INBOARD WATER SPORTS, INC.; | ) | |
| CHAPARRAL BOATS, INC.; and MERCURY | ) | |
| MARINE, INC., | ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) | Jerry A. Esrig, |
| | ) | Judge Presiding. |

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Ellis and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Regina Rocha filed her cause of action against defendants Munson Ski &
Inboard Water Sports, Inc. (Munson Ski), Chaparral Boats, Inc. (Chaparral), and Mercury
Marine, Inc. (Mercury Marine) (collectively defendants) following issues that arose from her
purchase of a 2017 Chaparral 337 SSX boat (boat) from Munson Ski. The boat was
manufactured by Chaparral, with the engine built by Mercury Marine. According to her
complaint, plaintiff alleged that Munson Ski sold her the boat as "new," but the boat was "more
likely, on information and belief, used." She encountered multiple issues with the steering
mechanism, requiring numerous repairs, and eventually revoked her acceptance of the boat and
cancelled her contract. The case was tried before a jury on all but two counts, which were later

heard in a bench trial. In August 2022, the jury entered a verdict in favor of defendants. In March 2023, the trial court entered judgment on the remaining two counts in favor of Munson Ski.

¶ 2 On appeal, plaintiff argues that the trial court erred (1) by declining to instruct the jury in accordance with its pretrial ruling on a summary determination that the boat was "not new" and *sua sponte* changing that determination, (2) by refusing to give certain nonpattern jury instructions proffered by plaintiff, and (3) by applying equitable principles to divide the escrow funds from the subsequent sale of the boat equally between plaintiff and Munson Ski.

¶ 3 In November 2019, plaintiff filed her initial complaint which she subsequently amended. In February 2021, she filed her second amended complaint alleging 10 counts against defendants. The following counts were alleged against Munson Ski: injunctive relief under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (Magnuson-Moss Warranty Act) (15 U.S.C. § 2301 *et seq.* (2018)) (Count I), breach of implied warranty of merchantability under the Magnuson-Moss Warranty Act (Count II), revocation of acceptance and cancellation of the contract under the Uniform Commercial Code (810 ILCS 5/2-608, 2-711(1) (West 2018)) (Count III), common law fraud for misrepresentation (Count VIII), common law fraud for fraudulent concealment (Count IX), and a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2018)) (Count X). The complaint against Chaparral alleged a breach of express warranty under the Magnuson-Moss Warranty Act (Count IV) and a breach of implied warranty of merchantability (Count V). The complaint against Mercury Marine alleged a breach of express warranty under the Magnuson-Moss Warranty Act (Count VI) and a breach of implied warranty of merchantability (Count VII).

¶ 4    The trial court entered multiple rulings prior to trial. In October 2020, one of those orders allowed Munson Ski to sell the boat. The proceeds of the which were to pay off any loans on the boat to provide a clean title transfer to the purchaser. Any additional funds were to be held in an escrow account until the resolution of the case.

¶ 5    In May 2021, plaintiff filed a motion for summary determination asking the trial court to decide that the boat was "used." Subsequently, the trial court granted plaintiff's motion for a summary determination, in part, which provided: "the Court finding that the subject boat was not 'new' when sold to Plaintiff, but said ruling is not holding that Plaintiff's fraud claim against Munson has been established."

¶ 6    A jury trial was held in August 2022 on eight of the counts pled in plaintiff's second amended complaint. The remaining two counts for injunctive relief under the Magnusson-Moss Warranty Act and under the Consumer Fraud Act (Counts I and X) against Munson Ski were continued for a bench trial. See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 74-78 (1994) (recognizing that equitable claims do not confer the right to a jury trial). Below we summarize the evidence presented at the jury trial.

¶ 7    Maryjo Munson, co-owner of Munson Ski, testified that, according to the Illinois Department of Natural Resources, a boat is not considered used until it is registered to the first owner. Matt Munson, the sales manager, similarly explained that a new boat is one that has never been sold, never been titled, never been registered with the State, and received the full factory warranties. The boat at issue was ordered from Chaparral by Munson Ski in 2016 and had a manufacturer suggested retail price (MSRP) of $310,000. Plaintiff bought the boat on July 17, 2018, for $217,411.41, which included sales tax, freight, license, title, and registration. The boat

was registered as new, and the warranties with Chaparral and Mercury were also registered as new. Plaintiff received the full manufacturer's warranty with her purchase.

¶ 8    While the boat was in stock at Munson Ski, Matt Munson operated the boat about 7 to 10 times for approximately 2 to 4 hours per use. The boat was kept in a slip at Lake Geneva in Wisconsin. He used the boat for multiple purposes, including demonstrations, test drives, showing the boat to customers, and personal use. It was easier to sell boats when they were on the water and in use because it helped showcase the "lifestyle." According to Matt Munson, the average hours a boat is used per season in Chicago is about 60 hours. He explained that the purchase price in this case took into account the amount of time the boat had been in stock and the hours used. Matt Munson testified that he discussed the hours used with plaintiff and that those hours of operation were also displayed on a meter on the boat.

¶ 9    Munson Ski salesperson Mark Biasco oversaw the sale of the boat to plaintiff. The sales contract did not refer to the boat as a "demo." The hours of operation were not disclosed to plaintiff in writing, but Biasco testified that he told plaintiff about the boat's history, including that it had been run on Lake Geneva and had hours on it. He also had Matt Munson speak with plaintiff in part to share his experiences using the boat. Biasco denied withholding any information that was relevant and required to be disclosed. In contrast, plaintiff denied that anyone at Munson Ski disclosed the hours the boat had been used either verbally or in writing. When asked if she would have bought the boat if it was "hypothetically not new," she responded, "Absolutely not." She wanted a brand-new boat with a full warranty that was safe for Lake Michigan.

¶ 10    As part of the sale, plaintiff received two days of boat training from Munson Ski with Fred Szott. He met with her on two occasions for six hours each, for a total of approximately 12

hours. He explained the safe operating procedures, the functionality of both the boat and the drive system, and how to use things in a safe manner. Prior to the training sessions, plaintiff had no boating experience, had never owned or driven a boat before, and did not know how to dock and/or tie a boat. Plaintiff admitted that she did not read the user manual for the boat. Szott emphasized that when leaving the dock, no lines should be "left hanging." Szott explained the different gauges on the display, including the hour meter. The hour meter is "predominantly displayed" and is important for maintenance. He compared it to the odometer in cars so an owner would know when to change the oil which on a boat it is by the hours used.

¶ 11    Plaintiff reported steering problems with the boat in August 2018, June 2019, and August 2019. All of the repairs were covered and completed under the warranty. For the August 2018 report, Munson Ski technicians told Maryjo Munson that problem was user error. Mercury Marine issued a service bulletin in 2019 for a software update. A Mercury Marine product safety manager stated that plaintiff's steering issue in June 2019 was not the same problem that needed to be corrected by the service bulletin. The work order from June 2019 showed that the repair technician found no issues and "seem[ed] to be user error." The software update was completed on the boat.

¶ 12    In August 2019, plaintiff ran over a dock line while operating the boat, which became tangled around the starboard propeller. Plaintiff then jumped into the water, saw the rope, got a serrated knife, and cut the rope with the knife. Once the rope was removed, she was able to start the boat and did not have steering issues driving into the marina. The following day, plaintiff lost steering on the boat as she was leaving the marina and speeding up in open water. It was later determined by Munson Ski that the left steering arm of the boat was broken. According to Munson Ski, the steering arm was broken as a result of the dock line incident.

¶ 13     While running over a dock line was not truly a warranty issue, the repairs were performed under the warranty anyway, for customer relations, at the expense of Chaparral or Mercury Marine, including the replacement of the entire transom assembly. Subsequently, the boat was removed from the water, taken to Munson Ski in August 2019, but the repairs were delayed because some of the parts were on back order. Maryjo Munson estimated that plaintiff lost approximately six weeks of boating for that season. On November 1, 2019, plaintiff contacted Munson Ski to revoke her acceptance of the boat and cancel the sales contract.

¶ 14     Munson Ski later sold the boat to Joe Hajnos for $216,040, including a trade-in boat, in November 2020. After the balance on plaintiff's loan was paid, the remaining proceeds from the sale, $56,345.98, were deposited into an escrow account in accordance with the court's order. Hajnos testified that he did not see anything unusual in the service reports for the boat. This was the third boat he had purchased. However, it was his first boat he owned with this particular steering joystick, and he referred to the manual to understand some of the operator errors he had made. He was happy with the purchase and had a very good experience with Munson Ski.

¶ 15     After revoking her acceptance of the Chaparral boat, plaintiff purchased a 35-foot Formula boat. She admitted the Formula boat was a "demo" boat, which she did not consider a new boat. The Formula boat had 35 hours of use and was sold as a new boat in the purchase paperwork signed by plaintiff. Still, plaintiff maintained that she would not have bought the Chaparral boat from Munson Ski if she knew it had hours of use.

¶ 16     On August 18, 2022, the jury entered verdicts in favor of all defendants on all claims, other than the trial court's granting of summary judgment and dismissal in favor of Chaparral on the claim of breach of express warranty. On August 22, 2022, the trial court entered judgment on the jury's verdicts.

¶ 17    Both plaintiff and Munson Ski filed their respective memoranda requesting the trial court to release all of the escrow funds to each of them. Plaintiff also filed a motion for entry of judgment on the two remaining counts. On March 3, 2023, the trial court denied plaintiff's motion and entered judgment on the remaining counts in favor of Munson Ski. The court further ordered that the $56,345.98 held in escrow be divided equally, with both plaintiff and Munson Ski receiving 50% ($28,172.99). The court also allowed plaintiff 35 days to file a postjudgment motion and stated, "This period shall not operate to retroactively lengthen or renew any previously applicable deadline, and Defendants do not waive any arguments as to the untimeliness of any post judgment motion."

¶ 18    Plaintiff filed her motion for a new trial on April 3, 2023, and argued that (1) plaintiff was prejudiced by the trial court's modification of its summary determination, (2) the trial court erred in refusing to give several jury instructions proffered by plaintiff, and (3) the trial court should reconsider its division of the escrow funds. In response, defendants filed a motion to strike plaintiff's posttrial motion as untimely pursuant to section 2-1202 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1202 (West 2020)). Defendants contended that plaintiff's arguments related to the jury verdict were untimely because those claims should have been raised in a posttrial motion filed within 30 days of the court's entry of judgment on the jury verdict. Since plaintiff did not file the appropriate motion, defendants maintained that plaintiff forfeited her right to seek a new trial. The trial court denied both defendants' motion to strike as well as plaintiff's motion for a new trial in July 2023.

¶ 19    In September 2023, the trial court submitted a bystander's report regarding the hearings held on March 3, 2023, and July 14, 2023. Regarding the division of the escrow funds, the trial court ordered a 50/50 division of the proceeds "based on the lack of statutory, court rule, or case

law to guide the distribution. The Court determined that equitable principles guide the distribution based on the parties' memoranda on the issue." The bystander's report further noted, "With respect to the escrow funds, the Court stated that, given there was on [*sic*][1] agreement as to the disposition of the funds, it was correct in applying equitable principles in deciding this issue."

¶ 20 This appeal followed.

¶ 21 Defendants initially argue that plaintiff forfeited her right to challenge any issues based on the jury verdict because she failed to file a timely posttrial motion. While defendants frame this issue in terms of forfeiture, the question relates to this court's jurisdiction, which we have a duty to consider. See *Trutin v. Adam*, 2016 IL App (1st) 142853, ¶ 21. "This court has an obligation to consider its jurisdiction at any time and should dismiss an appeal if jurisdiction is lacking." *In re Marriage of Tetzlaff*, 304 Ill. App. 3d 1030, 1035 (1999). Plaintiff filed her notice of appeal under Illinois Supreme Court Rule 303, which provides:

> "The notice of appeal must be filed with the clerk of the circuit court within 30
> days after the entry of the final judgment appealed from, or, if a timely posttrial
> motion directed against the judgment is filed, whether in a jury or a nonjury case,
> within 30 days after the entry of the order disposing of the last pending
> postjudgment motion directed against that judgment or order, irrespective of

---

[1]While the trial court used the word "on" in the bystander's report, we find this to be a scrivener's error and from the context, the court intended to write "no." See *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 17 (a "scrivener's error" is a clerical error resulting from a minor mistake or inadvertence when writing or when copying something on the record, including typing an incorrect number).

whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 22    Defendants argue that under section 2-1202(c), plaintiff was required to file her posttrial motion on the jury verdict within 30 days from when the trial court entered judgment on the verdict, August 22, 2022. Plaintiff, however, did not file a posttrial motion until after the trial court ruled on the remaining bench counts on March 3, 2023, and did not request any extensions of time to file a posttrial motion. Her posttrial motion was filed on April 3, 2023, and raised issues related to both the jury trial and the bench findings. Plaintiff maintains that her motion was timely because she filed within 30 days of the trial court's judgment on the bench trial.

¶ 23    Section 2-1202(c) of the Code "governs the time frame applicable to the filing of posttrial motions" in civil jury cases. *Trentman v. Kappel*, 333 Ill. App. 3d 440, 442 (2002). Section 2-1202(c) provides: "Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1202(c) (West 2020).

¶ 24    A timely filed posttrial motion "stays enforcement of the judgment." *Id.* § 2-1202(d). After the 30-day period has expired under section 2-1202(c), without the trial court extending the deadline, the trial court loses jurisdiction over the case. *Manning v. City of Chicago*, 407 Ill. App. 3d 849, 852 (2011). Once the trial court loses jurisdiction over this judgment, any subsequent orders entered, including a notice of appeal which would vest jurisdiction with our court, are not viable. *Id.*

¶ 25    Our review of the case law interpreting section 2-1202(c) demonstrates that Illinois courts have historically held that appellate courts lack jurisdiction to consider a plaintiff's appeal when the plaintiff has failed to file his or her posttrial motion within the time frame allotted by section

2-1202(c). See *Portock v. Freeman*, 53 Ill. App. 3d 1027 (1977); *Kwak v. St. Anthony de Padua Hospital*, 54 Ill. App. 719 (1977); *Trentman* , 333 Ill. App. 3d 440; *In re Estate of Kunsch*, 342 Ill. App. 3d 552 (2003); *Lowenthal v. McDonald*, 367 Ill. App. 3d 919 (2006); *Manning*, 407 Ill. App. 3d 849; *Village of Lake in the Hills v. Hain*, 222 Ill. App. 3d 88 (1991).

¶ 26     In *Portock*, the reviewing court analyzed the predecessor to section 2-1202(c), section 68.1(3) of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, ¶ 68.1(3)) to determine whether the plaintiff timely filed his posttrial motion. The language of section 68.1(3) remains largely unchanged to the current version of section 2-1202(c): " 'Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof.' " (Emphases omitted.) *Portock*, 53 Ill. App. 3d at 1030 (quoting Ill. Rev. Stat. 1975, ch. 110, ¶ 68.1(3)).

¶ 27     There, the trial court entered judgment on July 21, 1975, and the plaintiff sought three extensions to file his posttrial motion. The final extension was timely entered on October 10, 1975, and allowed the plaintiff until November 5, 1975, to file his posttrial motion and set the matter for a hearing on November 12, 1975. The plaintiff did not file his motion until November 12, 1975. *Id.* at 1028-29. The *Portock* court held that the plaintiff's motion was untimely because it was not filed within the time frame set by the court and no additional extensions were sought. Thus, the trial court "no longer retained jurisdiction to entertain it on its merits." *Id.* at 1030.

¶ 28     Similarly, in *Kwak*, the Fifth Division of this court considered section 68.1(3) to determine whether the plaintiff timely filed a posttrial motion. In that case, the trial court entered two operative orders: a summary judgment order from January 26, 1976, and a directed verdict from January 29, 1976. On February 23, 1976, the plaintiff sought an extension of time for 30 days to file a posttrial motion for both orders, but the trial court did not grant the motion until

March 10, 1976. The motions were then filed on March 18, 1976, and later denied by the court. *Kwak*, 54 Ill. App. 3d at 723.

¶ 29 On appeal, the defendant argued that the notice of appeal was untimely because the posttrial motions were untimely. The reviewing court observed that because

> "the judgments of January 26 and 29 were at all times final, the jurisdiction of the trial court could be extended beyond February 25 and 28 only if prior to these dates a post-trial motion had been filed or the trial court had allowed an extension of time within which to file such motion." *Id.* at 724.

The court found that the plaintiff failed to both request the extension of time and have it allowed by the trial court before February 25 and 28, and accordingly "the trial court was without jurisdiction to entertain her motion on March 10." *Id.* Significantly the *Kwak* court's holding clarified that both the motion for an extension and the trial court's granting of an extension must occur before the filing deadline has passed. *Id.*

¶ 30 Following the holding in *Kwak*, the Fifth District in *Trentman* concluded that the trial court lost jurisdiction when the plaintiff failed to receive an additional extension of time or file his posttrial motion before the time frame passed. *Trentman*, 333 Ill. App. 3d at 444. In that case, the plaintiff filed nine timely requests for an extension of time, but in his tenth request, he missed the deadline. For his tenth extension of time, the plaintiff had until January 4, 2000, to both file his motion and obtain the trial court's order. He filed his motion on January 3, but the court did not grant the motion until January 5, 2000. *Id.* at 443-44. The reviewing court held that "All orders entered by the trial court subsequent to January 4, 2000, exceeded the circuit court's jurisdiction." *Id.* at 444.

¶ 31 The *Trentman* court reviewed the language of section 2-1202(c) and found it to be "quite

11

plain and seems to be free of ambiguity." *Id.* at 442. The Fifth District further observed that this issue had not arisen since *Kwak*. *Id.* at 443.

> "It is quite possible that the reason this issue has not arisen since 1977 is that the language of section 2-1202(c) of the Code of Civil Procedure is evident and exact. If a party cannot file his or her posttrial motion within the original 30-day period, that party must obtain the trial court's extension within that same 30-day period. If a party does not obtain an extension and the 30 days are allowed to pass, then the trial court no longer has jurisdiction to allow an extension of time. If a party obtains an extension of time and needs an additional extension or extensions of time in which to file a posttrial motion, the additional extension(s) of time must be secured prior to expiration of the previously extended deadline." *Id.*

¶ 32       The Second District in *Kunsch* followed the analysis in both *Kwak* and *Trentman* to find that the defendants' motions that were collateral to the judgment did not extend the time for the plaintiff to file his posttrial motion. *Kunsch*, 342 Ill. App. 3d at 557. In that case, the jury verdict was entered on March 19, 2002. On March 22, 2002, the defendants filed two motions, one for costs and the other to strike the *lis pendens* on the decedent's home. The plaintiff filed his request for an extension of time on April 18, 2022, and the trial court granted the extension on May 1, 2002. *Id.* at 553. On appeal, the *Kunsch* court, citing *Trentman* and *Kwak*, held that the plaintiff's motion was untimely because the extension was not granted within 30 days of the judgment. *Id.* at 554-55. The reviewing court further examined the defendants' motions to determine if the substance of these motions extended the time for the plaintiff to file his motion. The court found that "[w]here a motion seeks to satisfy, rather than modify, a judgment, it is not a posttrial motion within the ambit of section 2-1202." *Id.* at 555. Thus, the court held that the

defendants' motions were not directed against the judgment, but rather sought to satisfy, and were collateral to, the judgment. *Id.* at 555-57. Since the plaintiff's motion was not timely filed within 30 days, the reviewing court lacked jurisdiction and dismissed the appeal. *Id.* at 559.

¶ 33    In *Lowenthal*, the Second District considered "whether the parties' agreement to extend the time for filing a posttrial motion validates an untimely motion requesting such an extension." *Lowenthal*, 367 Ill. App. 3d at 920. There, the plaintiff obtained a timely extension of time until October 4, 2004, but she attempted to obtain a second extension by faxing the court a motion for an extension on October 4, 2004. The reviewing court found it was "clear that on October 4, plaintiff had failed to either file her posttrial motion or *obtain* an extension to file the posttrial motion." (Emphasis in original.) *Id.* at 923. The plaintiff argued that since defendant's attorney stated in a telephone conversation on October 1, 2004, that "he did not object to plaintiff obtaining another extension to file her posttrial motion, the trial court had the authority to equitably extend the deadline for filing the posttrial motion." *Id.* The *Lowenthal* court disagreed and held that the defendant's "agreement that he would not object to plaintiff requesting a second extension of time to file her posttrial motion did not somehow revest the trial court with jurisdiction over the matter or otherwise trump the requirements of section 2-1202 of the Code." *Id.* at 925.

¶ 34    The reviewing court in *Manning* similarly adhered to these principles and found the plaintiff's untimely motion deprived the court of jurisdiction. *Manning*, 407 Ill. App. 3d at 851. In that case, the trial court entered final judgment on the jury's verdict against the plaintiff and for the defendants on September 4, 2008. *Id.* at 854. Within 30 days, the plaintiff requested an extension of time, and the trial court granted the motion, allowing the plaintiff until December 19, 2008, to file his posttrial motion. The plaintiff filed a second motion for an extension of time

on December 18, 2008, within the deadline set forth by the court. *Id.* However, the trial court did not grant the motion until December 29, 2008, which was past the deadline.

¶ 35    The *Manning* court found that "*Trentman* and *Kunsch*, along with *Kwak*, *Portock* and *Lowenthal*, make our ruling here clear." *Id.* Although the trial court continued to grant additional motions for extensions, the appellate court held that after the December 19, 2008, deadline passed with no ruling granting an additional extension, the trial court had lost its jurisdiction over the case, and the plaintiff's eventual notice of appeal was untimely. *Id.* at 855; see *In re Estate of Andre T.*, 2018 IL App (1st) 172613, ¶¶ 35-36 (this court found the mother's motion to dismiss the trial court's appointment of guardians to be untimely when filed more than 30 days after the appointment order had been entered); *Rocha v. FedEx Corp.*, 2020 IL App (1st) 190041, ¶ 55 (observing that "[i]n jury cases, a posttrial motion must be filed within 30 days after the entry of judgment or within any other timeframe as allowed by the circuit court, so long as the court allows such an extension within the initial 30-day window or any extension period"); *Habitat Co., LLC v. Peeples*, 2018 IL App (1st) 171420, ¶ 15 (recognizing the "general rule is that a trial court loses jurisdiction over a case and has no authority to vacate or modify a final judgment once 30 days have elapsed, unless a timely postjudgment motion has been filed").

¶ 36    In *Hain*, the Second District considered whether a posttrial motion is timely when filed prior to the judgment on the jury verdict. On January 31, 1991, the defendant filed his motion for a new trial pursuant to section 2-1202. *Hain*, 222 Ill. App. 3d at 89-90. The trial court entered judgment on the jury verdict on February 7, 1991. The trial court subsequently denied the defendant's motion on March 5, 1991, and he filed a notice of appeal on March 25, 1991, and listed February 7, 1991, as the date of the judgment he was appealing. *Id.* at 90.

¶ 37    On appeal, the reviewing court observed that the defendant's notice of appeal was filed more than 30 days after the judgment he was appealing and noted that the only possible source of its jurisdiction was the January 31, 1991, motion for new trial that was denied on March 5, 1991. *Id.* The *Hain* court found that the defendant's posttrial motion was not timely because it was filed *before* the entry of the judgment on the jury verdict as required under section 2-1202(c). *Id.* The court held that "the defendant's post-trial motion was neither timely nor directed against the judgment, both of which are required to invoke the tolling provisions of Rule 303(a)." *Id.* Thus, the reviewing court concluded that it lacked jurisdiction over the defendant's appeal and dismissed his appeal. *Id.* at 91; see *Pempek v. Silliker Laboratories, Inc.*, 309 Ill. App. 3d 972, 978 (1999) (the reviewing court concluded that a posttrial motion against the jury verdict was untimely because it was not filed within 30 days of the entry of the judgment and that deadline was not tolled by the resolution of the remaining issues); *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984) (the supreme court held that a motion to reconsider the granting of summary judgment was untimely under section 2-1203 (Ill. Rev. Stat. 1983, ch. 110, ¶ 2-1203) when it was filed before the formal signed order had been entered, and jurisdiction did not vest with the appellate court).

¶ 38    As these cases have demonstrated, Illinois courts have "specifically and repeatedly made clear that the language of section 2-1202(c) is plain and unambiguous," meaning that the trial court will lose jurisdiction if a posttrial motion is either not filed or an extension is not allowed within the 30-day period after the entry of the judgment. *Manning*, 407 Ill. App. 3d at 851. Here, the trial court entered judgment on the jury verdict on August 22, 2022, and the 30-day time period to file a posttrial motion began. Plaintiff did not file, nor seek an extension, within 30 days of the judgment. Rather, she waited until the trial court ruled on the remaining bench trial

15

counts to file a motion for a new trial, more than 30 days after the entry of judgment.

¶ 39    Additionally, the Fifth Division of this court in *Bizarro v. Ziegler*, 254 Ill. App. 3d 626, 628 (1993), rejected the defendants' argument that its belated posttrial motion was timely. In that case, following a jury trial, the plaintiff filed a timely posttrial motion for a judgment *n.o.v.* on a finding of contributory negligence, which the trial court granted and entered an order awarding the full damages. Nearly three months after the jury verdict and the trial court's entry of the judgment, but within 30 days of the court's order granting the judgment *n.o.v.*, the defendant sought leave to file its posttrial motion. The trial court denied leave "with respect to any issue other than those related to the judgment notwithstanding the jury's finding of contributory negligence." *Id.* at 629.

¶ 40    The defendants argued on appeal that the trial court did not enter its judgment until after it granted the plaintiff's posttrial motion. The defendants also asserted that section 2-1202(c) allows any party to file a posttrial motion of its own when a judgment is entered against that party pursuant to a posttrial motion. *Id.* at 636. The *Bizarro* court disagreed.

> "Although section 2-1202(c) does not expressly limit the issues which may be raised in a party's post-trial motion filed after a judgment has been entered against it pursuant to a post-trial motion to those issues raised in the original post-trial motion, such an interpretation is consistent with the section's unequivocal language establishing the 30-day time period and its language on the need to obtain extensions from the trial court for any additional filing time." *Id.* at 636-37.

See *Brigando v. Republic Steel Corp.*, 180 Ill. App. 3d 1016, 1020 (1989) (finding that the trial court lost jurisdiction 30-days after its order dismissing the case following a settlement); *Winters v. Kline*, 344 Ill. App. 3d 919, 928 (2003) (finding that the trial court's granting of a new trial is

16

not a final judgment because it "does not settle the merits of the case, terminate the litigation between the parties, or relieve the court of its subject matter jurisdiction"); *Arient v. Shaik*, 2015 IL App (1st) 133969 ¶¶ 12, 16 (the reviewing court held that the plaintiff forfeited his claims on appeal by failing to file a posttrial motion after a jury trial as required by section 2-1202(c)).

¶ 41 Further, Illinois courts have recognized the general rule that absent a timely posttrial motion, the trial court loses jurisdiction over a case 30 days after the entry of judgment also includes motions seeking to amend the judgment. See *Holwell v. Zenith Electronics Corp.*, 334 Ill. App. 3d 917, 922 (2002) ("In the absence of a timely filed post-judgment motion, a trial court loses jurisdiction over a case pending before it 30 days after the entry of a final judgment terminating the litigation."); *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 21 (finding that a miscalculation of attorney fees was a judicial error which was not an exception to the 30-day jurisdictional rule).

¶ 42 Given this extensive authority, these cases "make our ruling here clear." *Manning*, 407 Ill. App. 3d at 854. Following the plain language of section 2-1202(c), the time for plaintiff to file her posttrial motion on the jury verdict began when the judgment was entered and was not tolled because two counts seeking equitable relief remained pending. Under Section 2-1202(c), plaintiff had the option to either (a) file her posttrial motion within 30 days of August 22, 2022, the day judgment was entered on the jury verdict or (b) within that 30-day timeframe, request and obtain an extension of time to file a posttrial motion. Since plaintiff did neither of these things, her April 3, 2023, posttrial motion was untimely and, therefore, the trial court lacked jurisdiction pursuant to section 2-1202(c) to address the merits of her posttrial motion pertaining to any issues raised from the jury trial.

¶ 43 Plaintiff has failed to cite any valid and relevant cases to support her argument that her

posttrial motion was timely and proper under section 2-1202(c). First, plaintiff relies on *Mattuck v. DaimlerChrysler Corp.*, 366 Ill. App. 3d 1026 (2006), but that decision was vacated by the supreme court in a supervisory order. See *Mattuck v. DaimlerChrysler Corp.*, No. 103175 (Ill. Nov. 29, 2007) (supervisory order). "Judgments vacated by the supreme court are void and have no effect." *People v. Balark*, 2019 IL App (1st) 171626, ¶ 73; see *Kelch v. Watson,* 237 Ill. App. 3d 875, 877 (1992) ("The effect of a vacated order is that of a void order. Black's Law Dictionary defines 'vacate' as follows: '[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment.' (Black's Law Dictionary 1548 (6th ed. 1990).)"). Thus, *Mattuck* is not valid authority and cannot support plaintiff's argument.

¶ 44    Second, we find plaintiff's reliance on *Kral v. Fredhill Press Co.*, 304 Ill. App. 3d 988 (1999), to be misplaced. In that case, the trial court entered a default judgment with an award of damages against one of the defendants. More than two years later, the trial court granted the plaintiff's motion to dismiss the remaining defendant. Less than 30 days after the dismissal, the defaulted defendant moved to vacate the default judgment under section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 1996)). *Kral*, 304 Ill. App. 3d at 990-91. The trial court denied the motion to vacate and found the motion was untimely because it was not filed within 30 days of the entry of the default, as required under section 2-1301(e), and was unaffected by the proceedings continuing against another defendant. *Id.* at 991. The trial court's default judgment order did not contain a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) making the order immediately appealable. *Kral*, 304 Ill. App. 3d at 991.

¶ 45    On appeal, the reviewing court considered the statutory language of section 2-1301(e), which states, "The court may in its discretion, before *final order or judgment*, set aside any default, and may on motion filed within 30 days after entry thereof set aside any *final order or*

*judgment* upon any terms and conditions that shall be reasonable." (Emphases added.) 735 ILCS 5/2-1301(e) (West 2020). The *Kral* court focused on the language of the statute as it related to Rule 304(a), which "authorizes an appeal from a final judgment as to one or more but fewer than all of the parties or claims where the trial court has made an express written finding that 'there is no just reason for delaying enforcement or appeal.' " *Kral*, 304 Ill. App. 3d at 992 (quoting Ill. S. Ct. R. 304(a) (eff. Feb. 1, 1994)). If such finding has not been made, then

> "any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

The reviewing court concluded that the defendant's motion to vacate was timely filed because the 30-day period under section 2-1301(e) did not begin to run until the trial court had "a final judgment disposing of all of the issues as to all of the parties." *Kral*, 304 Ill. App. 3d at 994. We find *Kral* inapplicable to this case because its analysis addressed section 2-1301(e) and did not consider the statute at issue here, section 2-1202(c).

¶ 46    We further point out that while section 2-1301(e) specifically refers to the filing within 30 days of a "final order or judgment," section 2-1202(c) does not include similar final judgment language. In interpreting section 2-1202(c), "our primary objective is 'to ascertain and give effect to the intent of the legislature.' " *Brunton v. Kruger*, 2015 IL 117663, ¶ 24 (quoting *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56). "The best indication of that intent is the language of the statute itself, which must be given its plain and ordinary meaning." *Id.* " 'We will not depart from the plain statutory language by reading into it

19

exceptions, limitations, or conditions that conflict with the expressed intent of the legislature.' " *Id.* (quoting *Gaffney*, 2012 IL 110012, ¶ 56).

¶ 47    As previously quoted above, section 2-1202(c) provides: "Post-trial motions must be filed within 30 days after the entry of judgment or the discharge of the jury, if no verdict is reached, or within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1202(c) (West 2020). The plain statutory language does not state that the posttrial motions "must be filed within 30 days" of a final judgment, but rather, "the entry of judgment." In contrast with section 2-1301(e), the legislature did not include language setting the 30-day clock at the entry of a final judgment, and we decline to depart from the plain language of section 2-1202(c) to reach this conclusion. Since the trial court lacked jurisdiction over plaintiff's claims against the judgment on the jury verdict, this court, likewise, lacks jurisdiction to consider plaintiff's claims related to the jury verdict and we dismiss those claims. See *Manning*, 407 Ill. App. 3d at 852 ("once the trial court loses jurisdiction, any subsequent orders entered, including a notice of appeal which would vest jurisdiction with our court, are not viable").

¶ 48    The only remaining issue before us on appeal is whether the trial court erred in its distribution of the escrow funds from the sale of the boat to Hajnos. The escrow funds totaled $56,345.98, and the trial court ordered the funds to be equitably divided between plaintiff and Munson Ski, with each receiving $28,172.99. Plaintiff contends that the court's reliance on equitable principles was error because Munson Ski did not file a counterclaim for the award of the escrow money. Plaintiff further asserted that Munson Ski "did not request a setoff in their pleadings."

¶ 49    In its surreply, Munson Ski states that in February 2022, the trial court allowed it to file amended affirmative defenses, which included a request for a setoff of the proceeds from the sale

of the boat. Munson Ski asserted in its affirmative defense for a setoff that plaintiff received a benefit from the sale of the boat because her outstanding balance of the loan was paid in its entirety and, thus, her "out of pocket expenses and/or costs for the purchase of the Boat are less than the amount stated on the purchase documents." Munson Ski argued that it was "entitled to a set-off of any alleged liability due to the reduced price Plaintiff actually paid for the Boat, and/or any benefits received by Plaintiff." Munson Ski asks this court to affirm the equitable division of the escrow money.

¶ 50　The trial court has broad equitable power to grant relief when there is no adequate remedy at law. *Lewsader v. Wal-Mart Stores, Inc.*, 296 Ill. App. 3d 169, 175 (1998). The exercise of these equitable powers is a matter of sound judicial discretion controlled by established principles in equity and exercised upon a consideration of all the facts and circumstances of a particular case. *Id.* Thus, the decision to grant or deny equitable relief is within the sound discretion of the trial court and will not be reversed by this court absent an abuse of that discretion. *Id.*

¶ 51　Plaintiff has premised her argument on the mistaken belief that Munson Ski did not seek a setoff. While it is true that "a party cannot be granted relief in the absence of corresponding pleadings" (*Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994)), Munson Ski did file an amended pleading, seeking a setoff based on the proceeds from the sale of the boat and therefore, plaintiff's argument on this basis lacks merit.

¶ 52　Plaintiff's only other argument is a brief contention that Munson Ski did not present evidence of any pertinent matters related to the value of the setoff. Plaintiff relies on a single case discussing a claim for a setoff based on the mileage of a vehicle. See *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719 (1997).

21

¶ 53    In that case, the plaintiff purchased a used vehicle and later discovered the odometer had been altered. She subsequently filed a cause of action against the auto dealer and previous owner for several counts related to the altered odometer. *Id.* at 723-24. Judgments were entered in favor of the plaintiff by the jury and the trial court, and the plaintiff was awarded damages from both defendants. *Id.* at 724-25. The auto dealer raised multiple claims on appeal, but plaintiff's reliance focuses on a single issue. The auto dealer argued that the recission of the contract did not place it in the position it held prior to the contract because the plaintiff had retained the car and continued to use it. *Id.* at 728. The reviewing court observed that the auto dealer was, in essence, seeking a setoff from the benefit the plaintiff received in driving the car for nearly 40,000 miles. *Id.* The *Majcher* court found the trial court did not abuse its discretion in declining to award a setoff because the trial court had found that " '[t]here was no proof as to the value of the mileage driven,' " as the plaintiff encountered many issues and repairs during her use of the car. *Id.*

¶ 54    In relying on *Majcher*, plaintiff concludes that Munson Ski did not present any evidence to support the award of a setoff, but again her contention does not consider the pleading in which Munson Ski alleged that plaintiff received the benefit of having her loan paid by the sale proceeds and it was entitled to setoff based on the now-reduced price plaintiff paid for the boat. Evidence was presented at trial discussing the purchase price paid by plaintiff, as well as the price paid by Hajnos, and that plaintiff's loan was paid with the proceeds. Thus, contrary to plaintiff's argument, there was evidence presented at trial to support the equitable distribution of the funds based on Munson Ski's setoff claim.

¶ 55    Additionally, plaintiff does not discuss the trial court's determination of the equitable remedy nor explain how the distribution was an abuse of discretion. The trial court in the

22

bystander's report explained the basis of its equitable remedy. The court determined "based on the lack of statutory, court rule, or case law to guide the distribution" that "equitable principles guide the distribution based on the parties' memoranda on the issue." The court further stated that absent an agreement about the distribution of the funds, it was proper to apply equitable principles to distribute the escrow funds. Accordingly, we find that no abuse of discretion occurred here and the trial court properly exercised its equitable powers to divide the escrow funds evenly.

¶ 56    Based on the foregoing reasons, we affirm the trial court's order dividing the escrow funds and dismiss all other claims for lack of jurisdiction.

¶ 57    Affirmed in part and dismissed in part.

*Rocha v. Munson Ski & Inboard Water Sports, Inc.*, **2024 IL App (1st) 231469**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-12974; the Hon. Jerry A. Esrig, Judge, presiding. |
| **Attorneys for Appellant:** | Dmitry N. Feofanov, of ChicagoLemonLaw.com, P.C., of Lyndon, for appellant. |
| **Attorneys for Appellee:** | Garrett L. Boehm Jr. and Stephen P. Ellenbecker, of Johnson & Bell, Ltd., of Chicago, for appellees. |